ATTORNEYS FOR APPELLANT
James H. Voyles, Jr.
Jennifer M. Lukemeyer
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Jan 15 2015, 1:10 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S03-1404-CR-295

JEFFREY A. CLEARY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Lake Superior Court, No. 45G04-1011-FB-114
The Honorable Thomas P. Stefaniak, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1212-CR-518

**January 15, 2015**

**David, Justice.**

On November 4, 2010, and for what was not the first time in his life, Jeff Cleary drank and then chose to get behind the wheel of his car. Unlike in the past, however, this time his decision led to the tragic death of a sixty-three-year-old man.

The State charged Cleary with multiple offenses related to his drunk driving. A jury returned guilty verdicts on some offenses, but reported that it was deadlocked on others. Cleary was then retried on all the offenses and found guilty as-charged by a second jury. We find no violation of either Indiana's statutory or constitutional double jeopardy protections, and therefore affirm.

## Facts and Procedural History

On the afternoon of November 4, 2010, Jeff Cleary drove to Giovanni's Restaurant in Munster, Indiana, for lunch and drinks with two other individuals. Over the course of the next six to seven hours, Cleary ordered six drinks—all doubles of Absolut Vodka and water—and the table shared a bottle of wine. Later that evening, Cleary went to the Country Lounge in Hobart, Indiana. He had most of another glass of wine and left after approximately forty-five minutes.

Cleary then left the Country Lounge, intending to go home. By that point it was nearly midnight, pitch-black, sleeting, and windy. Cleary called his wife on his cell phone. As Cleary was placing his call, he struck a service vehicle parked on the shoulder of the road. The service truck was parked, with its emergency lights activated, behind a semi that had a flat tire. Phillip Amsden, the service truck driver, was between the service truck and the semi. The impact of Cleary's vehicle pushed the service truck into the semi, pinning Amsden. Amsden died at the scene. Cleary claimed to be uninjured.

A paramedic evaluating Cleary at the crash scene noted that Cleary appeared drunk, with blood-shot eyes, slurred speech, and smelling of alcohol. State Troopers similarly noticed an overwhelming odor of alcohol and that Cleary's eyes were watery, his speech slurred, and his reactions slow. Cleary was placed in custody and transported to a local hospital. While there he was given several field sobriety tests and consented to a blood draw. Cleary failed each field sobriety test and his blood draw showed a blood-alcohol concentration of 240 milligrams per deciliter, or a BAC of .24.

The State charged Cleary with five criminal charges and three infractions, all flowing from the November 4, 2010, collision:

- <u>Count I</u>: Causing death when operating a motor vehicle with a BAC of at least 0.15, a class B felony. Ind. Code § 9-30-5-5(b) (2010).
- <u>Count II</u>: Causing death when operating a motor vehicle while intoxicated, a class C felony. Ind. Code § 9-30-5-5(a).
- <u>Count III</u>: Operating a motor vehicle with a BAC of at least 0.15, a class A misdemeanor. Ind. Code § 9-30-5-1(b) (2010).
- <u>Count IV</u>: Operating a motor vehicle while intoxicated in a manner endangering a person, a class A misdemeanor. Ind. Code § 9-30-5-2(b) (2010).
- <u>Count V</u>: Operating a motor vehicle while intoxicated, a class C misdemeanor. Ind. Code § 9-30-5-2(a).
- <u>Count VI</u>: Failure to yield to a recovery vehicle, a class A infraction. Ind. Code §§ 9-21-8-35(c) (2010), 9-21-8-54(a) (2010).
- <u>Count VII</u>: Improper lane movement, a class C infraction. Ind. Code §§ 9-21-8-11 (2010), 9-21-8-49 (2010).
- <u>Count VIII</u>: Possessing more than one driver's license, a class C infraction. Ind. Code §§ 9-24-11-4(a) (2010), 9-24-11-8(a) (2010).

Cleary went to trial on all eight counts, and on December 14, 2011, a jury returned guilty verdicts on Counts IV and V, and found Cleary had committed the infractions alleged in Counts VI and VII. It deadlocked, however, on Counts I, II, and III.

The State did not move for a judgment on the verdicts, but Cleary did. The trial court allowed Cleary and the State until January 12, 2012, to submit briefs on the issue. It held a hearing on January 30, 2012, after which it denied Cleary's motion to compel an entry of judgment on the verdicts. It permitted the State to retry Cleary on all eight counts and set the second trial for August 27, 2012.

Cleary's second jury found him guilty of Counts I through V and liable for Counts VI and VII.[1]  The State moved for judgments on the verdicts as to Counts I, VI, VII, and VIII, and the trial court entered judgments of convictions as to those counts only.  The trial court fined Cleary $1500 for the three infractions and suspended his driving privileges for two years.  For the class B felony conviction on Count I, the trial court suspended Cleary's driving privileges for an additional five years and imposed a sentence of fourteen years in the Indiana Department of Correction.

Cleary appealed, arguing that his second prosecution should have been barred by double jeopardy, that the trial court abused its discretion in admitting evidence of Cleary's blood draw, and that his fourteen-year sentence was inappropriate in light of his character and the nature of the offense.  The Court of Appeals affirmed, Cleary v. State, 2 N.E.3d 765, 766 (Ind. Ct. App. 2014), with Judge Crone dissenting as to Cleary's double jeopardy claim, id. at 773.

We granted transfer and summarily affirm the Court of Appeals with respect to its resolution of Cleary's evidentiary issue and request for sentence revision.  Cleary v. State, 7 N.E.3d 992 (Ind. 2014) (table); Ind. Appellate Rule 58(A)(2).  We write only on Cleary's claim of a double jeopardy violation.

**Discussion**

Cleary's double jeopardy argument is multifaceted.  For starters, several provisions of the Indiana Code govern the entry of judgments of conviction and prohibit retrial in certain circumstances.  Cleary says those provisions operate together in a manner that prohibit his retrial.  Cleary couples this statutory claim with a constitutional one, arguing that Indiana's constitutional

---

[1] Cleary admitted to Count VIII.

double jeopardy protections apply to his case and were violated by his retrial and subsequent convictions.

Both of these challenges are reviewed de novo. Sloan v. State, 947 N.E.2d 917, 920 (Ind. 2011). And in short summary, we reject them both. As we explain below, the fact that Cleary's jury affirmatively deadlocked on his greater offenses is significant—and fatal to his claim—for several reasons. For one thing, it takes his case out of the scope of the implied acquittal doctrine. And as a consequence, the statutory provisions upon which Cleary relies do not bar his retrial. Second, in both Indiana and federal jurisprudence, hung juries do not create double jeopardy implications. As such, this aspect of his claim must also fail.

## I.    Indiana's Statutory Double Jeopardy Protections

We begin with Cleary's statutory claim. Cleary says that the Indiana Code required the trial judge here to enter judgments of conviction on the first jury's guilty verdicts, and if it had done so then those convictions would have statutorily prohibited his retrial on the same offenses. Additionally, he says those convictions would have implied acquittals in the charges for which his jury deadlocked, meaning the State could not retry those deadlocked charges, either. The Court of Appeals has previously resolved this very issue, in a way that rejects Cleary's view of how the statutes operate. This Court has not squarely addressed the question until today, but we likewise find Cleary's application of the statutes to be incorrect.

Indiana Code § 35-41-4-3 (2008) codifies protections against being placed in jeopardy more than once for the same offense. It provides, in relevant part, that "[a] prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if: (1) the former prosecution resulted in an acquittal or a conviction of the defendant." Ind. Code § 35-41-4-3(a). It also incorporates an "implied acquittal" principle by providing that "[a] conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside." Ind. Code § 35-41-4-3(a)(1); Haddix v. State, 827 N.E.2d 1160, 1165 (Ind. Ct. App. 2005), trans. denied.

5

Cleary's first jury reached a verdict of guilty on the lesser-included OWI misdemeanors—those charges not requiring proof that Cleary caused Amsden's death or proof of a BAC greater than 0.15—and it deadlocked on the greater offenses. It is unequivocal that if the trial court had entered a judgment of conviction for those lesser-included misdemeanors, Indiana Code § 35-41-4-3(a) would have barred the State from retrying Cleary on Counts I, II, and III.

But "a guilty verdict and a judgment of conviction are two rather different things." Carter v. State, 750 N.E.2d 778, 779 (Ind. 2001). They are "different acts from which different consequences flow." Id. at 780. "A verdict of guilty can certainly be a significant legal event, but only if a court later enters judgment on it." Id. Thus, the jury's guilty verdicts here are not inherently the same as "an acquittal or a conviction" such that Ind. Code § 35-41-4-3(a) necessarily applies. Similarly, they are not "conviction[s] of an included offense" such that the implied acquittal provision, by its terms, bars retrial on the greater offenses.

Cleary seeks the protection of this section regardless of the distinction between convictions and verdicts, because he says the trial court was compelled to enter a judgment of conviction on the lesser-included offenses pursuant to Indiana Code § 35-38-1-1.[2] But that

---

[2] Indiana Code § 35-38-1-1(a) (2008) provides that, subject to an exception not relevant here, "after a verdict, finding, or plea of guilty, if a new trial is not granted, the court shall enter a judgment of conviction." The statute does not specify how long a trial court has to accomplish this task. The Criminal Rules provide that a trial court shall "promptly" enter the judgment of conviction, and may be compelled by mandate to do so. Ind. Crim. Rule 15.1. And we have said that "the trial court may not withhold judgment but is required to enter a judgment of conviction immediately unless a temporary postponement is dictated by good cause shown or the interest of justice so requires." Debro v. State, 821 N.E.2d 367, 372 (Ind. 2005).

Cleary does not present an argument that the trial court's refusal to immediately enter convictions here was outside a permissible "temporary postponement," nor do we see the need to establish a firmer or brighter line than Debro. We agree with the Court of Appeals that the delay here was supported by good cause or otherwise in the interest of justice. See Cleary, 2 N.E.3d at 767-68 n.3. The delay was solely so that the trial court and parties could research the question of whether deadlocks on Cleary's greater offenses operated in the same manner as acquittals for double jeopardy purposes. We could hardly fault

6

provision does not require a judgment be entered when a new trial is granted. So essentially, Cleary's argument is that the jury's guilty verdicts on Counts IV and V were implied acquittals of Counts I, II, and III, therefore his retrial was barred on those greater offenses, and the trial court was required to enter the judgments of conviction on Counts IV and V. We reject Cleary's claim and conclude that a retrial was permissible in his case.

The Court of Appeals faced a similar situation in Haddix, 827 N.E.2d 1160. Much like Cleary, Haddix was charged with a number of OWI-based offenses and a jury returned guilty verdicts on several lesser-included offenses but deadlocked on the greater offenses. The trial court denied Haddix's motion for entry of judgment on the verdicts and this Court denied his subsequent petition for a writ of mandamus compelling the trial court to act. Haddix was retried. The second time around he was again found guilty of the lesser-included offenses, but expressly acquitted on the greater offenses.

Haddix appealed, claiming that his retrial violated the double jeopardy protections embodied in the Fifth Amendment to the U.S. Constitution and Indiana Code § 35-41-4-3(a). Id. at 1162. In rejecting Haddix's claim, the Court of Appeals relied on a most unlikely source: this Court's denial of Haddix's petition for a writ of mandamus. Id. at 1166-67.

Haddix's petition had advanced the same claim as his appeal. And though this Court's denial order was silent as to its basis, the Court of Appeals believed that holding on appeal that an entry of judgment of convictions had been required at the conclusion of Haddix's first trial "would seem to fly in the face of our supreme court's denial of Haddix's petition for writ of mandamus." Id. at 1166.

_____

the trial court for giving this issue reasonable consideration, as it has now drawn this Court into the case as well.

The Court of Appeals also reviewed the requirements for issuing a writ of mandamus, and found that the only requirement not satisfied was that "the respondent court has exceeded its jurisdiction or failed to act when it was under a duty to act." Id. at 1166-67 (citing Ind. Original Action Rule 3(A)). Thus, the Court of Appeals concluded that "the most likely and reasonable inference" to be drawn from the denial of Haddix's petition was that this Court "concluded the trial court was not under a duty to enter judgments of conviction on the first jury's guilty verdicts, and that it was proper to allow a second trial against Haddix on the C felony charges to go forward." Id. at 1167.

The Haddix panel saw this result as consistent with a view that Section 35-41-4-3(a) "does not require a trial court to enter a judgment of conviction on a guilty verdict for a lesser included offense if a jury simultaneously volunteers that it could not reach an agreement, either to acquit or convict, on the greater offense." Id. "Instead, in such a situation the general principles concerning hung juries would allow the trial court to declare a mistrial and not enter judgment on the lesser included offense guilty verdict." Id. And therefore there was no violation of Indiana Code § 35-41-4-3(a) because the literal terms of that provision only bar a second prosecution when there has been a *conviction* for a lesser-included offense—not merely a *verdict* on a lesser-included offense. Id.

The trial court here relied on Haddix in rejecting Cleary's motion for entry of judgment on the verdicts. Cleary argues that "such speculative reasoning should no longer be the litmus tests as to whether a trial court has the right to arbitrarily withhold entering a judgment of conviction merely to avoid jeopardy attaching." (Appellant's Br. at 11.) "Under Haddix, the State is given a tunnel to escape I.C. § 35-41-4-3 by giving trial courts the option to not enter a conviction as dictated by I.C. § 35-38-1-1." (Appellant's Br. at 11.)

We agree with Cleary that attempting to infer this Court's rationale from an order denying a petition for a writ of mandamus is a speculative venture. The denial of Haddix's petition for a writ of mandamus carries no more substantive or precedential weight than our subsequent denial of his petition to transfer following his direct appeal. Compare Ind. Appellate

8

Rule 58(B) ("The denial of a Petition to Transfer shall have no legal effect other than to terminate the litigation between the parties in the Supreme Court.") with Ind. Original Action Rule 5(B) ("If the application is denied, an order of denial shall be entered expeditiously. The denial of the application will end the proceedings, regardless of whether the Court has conducted a hearing.").

That cautionary note aside, for the reasons expressed below we agree with the Haddix panel's conclusion that Indiana Code § 35-41-4-3(a)'s implied acquittal provision does not apply when the jury returns a guilty verdict on a lesser-included offense but deadlocks on the greater charge. The doctrine arose in response to much different circumstances. See Price v. Georgia, 398 U.S. 323 (1970); Green v. U.S., 355 U.S. 184 (1957).

In Green, the defendant was charged with arson and first-degree murder, and the jury was instructed that they could also find Green guilty of second-degree murder on the first-degree murder count. The jury found him guilty of arson and second-degree murder and was silent as to first-degree murder. However, that conviction was later reversed on appeal and he was retried for first-degree murder. The U.S. Supreme Court concluded that the defendant's second trial for first-degree murder constituted a double jeopardy violation because it believed the first jury chose between first- and second-degree murder, and it "regarded the jury's verdict as an implicit acquittal on the charge of first degree murder." Green, 355 U.S. at 189–90. "In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'" Id. at 191.

Price expanded Green in a case in which a defendant was charged with murder and a guilty verdict returned on the lesser-included crime of voluntary manslaughter. The conviction was set aside after an appeal and the defendant retried for murder. He was again convicted of voluntary manslaughter and the U.S. Supreme Court found this impermissible even though the defendant was not ever convicted of the higher charge, as Green had been. Price, 398 U.S. at 329. The *result* of the second trial was not what controlled, the Supreme Court said, because

"the Double Jeopardy Clause of the Fifth Amendment is written in terms of potential or risk of trial and conviction, not punishment." Id. "To be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly." Id. at 331.

But significantly, neither Green nor Price involved juries that were *hung* on the greater offense. Rather, the juries in those cases were *silent* as to their verdicts on the greater charges. See Id. at 324 ("The jury returned a verdict of guilty to the lesser included crime of voluntary manslaughter . . . *The jury's verdict made no reference to the charge of murder*.") (emphasis added); Green, 355 U.S. at 186 ("The jury found Green guilty of arson and of second degree murder but did not find him guilty on the charge of murder in the first degree. *Its verdict was silent on that charge*.") (emphasis added). In light of the jury's silence in those cases, the Supreme Court assumed that the jury decided to acquit on the greater offense. See Id. at 190–91.

Courts in Indiana have therefore defined "implied acquittal" in line with the circumstances of Green and Price. It is "an 'acquittal in which a jury convicts the defendant of a lesser-included offense *without commenting on the greater-offense*.'" Kocielko v. State, 938 N.E.2d 243, 249 (Ind. Ct. App. 2010) (emphasis added) (quoting Moore v. State, 882 N.E.2d 788, 798 n.8 (Ind. Ct. App. 2008) (May, J., concurring in result)), trans. denied; see also Black's Law Dictionary 27 (9th ed. 2009).

Under that definition, Cleary's first trial "did not result in 'acquittal implied by conviction on a lesser-included offense.'" Kocielko, 938 N.E.2d at 249 (quoting Price, 398 U.S. at 329). Rather, "'[t]he jury's express statement that it could not agree on a verdict as to the greater offense obviously precludes the inference that there was an implied acquittal.'" Haddix, 827 N.E.2d at 1165 (quoting U.S. v. Bordeaux, 121 F.3d 1187, 1192 (8th Cir. 1997)). Simply put, "we cannot infer from the jury's verdicts that it believed [Cleary] was innocent." Moore, 882 N.E.2d at 798. Cf. Kocielko, 938 N.E.2d at 249 (rejecting implied acquittal claim when defendant acquitted of one charge and jury deadlocked on two others because "[a] deadlocked jury does not result in acquittal barring retrial under the federal Double Jeopardy Clause." (citing Tibbs v. Florida, 457 U.S. 31, 42 (1982) and Menifee v. State, 512 N.E.2d 142, 143 (Ind. 1987)).

10

We do not interpret the statutory implied acquittal provision any differently than the doctrine developed from Green and Price. Indiana Code § 35-41-4-3(a)(1) codifies the implied acquittal doctrine, but nothing in the statute expands the doctrine to include circumstances where the jury affirmatively states that it has deadlocked on the greater offense.[3] Accordingly, because the jury affirmatively deadlocked on the greater offenses at Cleary's first trial rather than remaining silent as to those counts, Section 35-41-4-3(a)'s implied acquittal provision is not implicated.[4] The guilty verdicts on the lesser-included offenses do not turn those deadlocked results into acquittals such that retrial would be barred under the statute.

And as we discuss in greater detail below, nothing in double jeopardy jurisprudence prohibits a retrial on the offenses where the jury is deadlocked. Instead, as the U.S. Supreme Court said, "when a jury in a federal court, which operates under the unanimity rule and is

---

[3] We also point out that this statutory provision does not stand alone. Indiana Code § 35-41-4-3(a)(2) addresses double jeopardy implications when a trial ends in a mistrial, and expressly provides that a subsequent prosecution is permitted when "the jury was unable to agree on a verdict." Ind. Code § 35-41-4-3(a)(2)(v). Cleary's position would mean that subsection (a)(1) would prohibit retrial when a jury deadlocks on a greater offense but returns a guilty verdict on a lesser-included offense for one defendant, because that deadlock should be equated with an acquittal, whereas (a)(2) would permit retrial if the jury deadlocked on all the offenses for a different defendant, apparently because that deadlock is *not* equated with an acquittal. In effect, Cleary proposes an exception to the general rule permitting retrials after deadlocked juries. There is no rational reason why the first defendant (Cleary) should benefit from that windfall, and we will not permit such an illogical result to flow from our interpretation of the statute.

[4] Cleary also says that the State chose to charge multiple grades of the same offense, and therefore it "assume[d] the risk that a jury may not find guilt on the more serious counts," and if the State wanted to avoid that risk then it should only have charged the greater offenses. (Appellant's Br. at 11.) But the fact that the State has discretion in charging is not dispositive on application of the implied acquittal doctrine, just as it is not dispositive on whether the lesser-included offenses are ultimately available to a defendant.

In Green, for example, Green was charged with first-degree murder and the jury was instructed that Green could be convicted on either the greater or lesser-included offenses. Green, 355 U.S. at 185. In Price, the defendant was also only charged with the greater offense—the lesser-included offense was provided to the jury in the final instructions. Price, 398 U.S. at 324. And in Haddix the State initially filed the lesser-included charges, but later excluded them by amending its charging information. Haddix, 827 N.E.2d at 1161–62. But as in Price, the trial court in Haddix instructed the jury on the lesser-included offenses based on the evidence presented at trial. Id.

instructed to acquit a defendant if it has a reasonable doubt about his guilt . . . cannot agree unanimously upon a verdict, the defendant is not acquitted, but is merely given a new trial." Johnson v. Louisiana, 406 U.S. 356, 363 (1972). The same is true for a jury in an Indiana courtroom. Menifee, 512 N.E.2d at 143–44. Because a retrial was therefore permissible on Counts I, II, and III, Indiana Code § 35-38-1-1 did not compel the trial court to enter judgments of conviction with respect to the first jury's verdicts on Counts IV, V, VI, and VII.

## II.    Indiana's Constitutional Double Jeopardy Protections

Cleary also argues that his retrial was barred by Indiana's constitutional protections against double jeopardy. He says that his convictions on the lesser-included offenses—which he asserts should have automatically flowed from the guilty verdicts on those charges—mean that he could not have been convicted (or even tried) for the greater offenses at his second trial.[5] To an extent, then, our conclusion that Indiana Code § 35-41-4-3(a) does not apply to Cleary's case necessarily sounds a death knell for this argument. We still address Cleary's position in light of our recent case law broadening the application of Indiana's constitutional double jeopardy prohibitions, but conclude that his claim nevertheless fails.

Article 1, § 14 of the Indiana Constitution provides, in part, that "[n]o person shall be put in jeopardy twice for the same offense." This prohibition—like all double jeopardy protections—"protect[s] the integrity of jury acquittals and the finality interest of defendants, shield[s] against excessive and oppressive prosecutions, and ensure[s] that defendants will not undergo the anxiety and expense of repeated prosecution and the increased probability of conviction upon reprosecution." Richardson v. State, 717 N.E.2d 32, 37 (Ind. 1999).

---

[5] As such, our analysis is only addressing Cleary's contention that double jeopardy would bar his retrial on the greater offenses upon which the jury was deadlocked (Counts I-III).

In determining whether those protections had been violated under the Indiana Constitution's terms, in <u>Richardson</u> this Court held that

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

<u>Id.</u> at 49. Cleary contends his retrial on the greater offenses fails both of these tests, but we do not believe the tests apply at all. Here, where there was no acquittal on the lesser-included offenses and the jury was hung on the greater offenses, the doctrine of continuing jeopardy applies to retrial on the greater offenses.

Although Cleary's second trial exposed him to "jeopardy" as that term is used in both Indiana and federal jurisprudence, it was not a new jeopardy distinct from that of his first trial.[6] "[T]he U.S. Supreme Court has consistently held that 'a retrial following a "hung jury" does not violate the Double Jeopardy Clause.'" <u>Griffin v. State</u>, 717 N.E.2d 73, 79 (Ind. 1999) (quoting <u>Richardson v. U.S.</u>, 468 U.S. 317, 324 (1984)).[7] This is true because the doctrine of continuing jeopardy applies. <u>See</u> <u>Griffin</u>, 717 N.E.2d at 78. Under this doctrine, "a defendant who is retried following a hung jury is not placed in jeopardy twice for the same offense, because the initial jeopardy that attaches to a charge is simply suspended by the jury's failure to reach a verdict." <u>Davenport v. State</u>, 734 N.E.2d 622, 625 (Ind. Ct. App. 2000). Furthermore, "[t]he Government,

---

[6] The idea of "jeopardy" is not simply the punishment embodied in a defendant's sentence, but "the risk of trial and conviction" itself. <u>Garrett v. State</u>, 992 N.E.2d 710, 721 (Ind. 2013); <u>see also</u> <u>Green</u>, 355 U.S. at 188 ("a defendant is placed in jeopardy once he is put to trial before a jury").

[7] <u>Griffin</u> resolved challenges based under both Indiana and federal double jeopardy protections, but the principles it states about those protections are broadly applicable to both, and Cleary does not argue that Indiana's constitutional provision has a different scope of how and when jeopardy terminates or continues.

13

like the defendant, is entitled to resolution of the case by verdict from the jury." Id. (quoting Richardson, 468 U.S. at 326).

Thus, the jury's deadlock meant that Cleary's second trial on the greater offenses was simply a continuation of the jeopardy from his first. See Green, 355 U.S. at 188. "[J]eopardy is not regarded as having come to an end so as to bar a second trial in those cases where 'unforeseeable circumstances . . . arise during [the first] trial making its completion impossible, *such as the failure of a jury to agree on a verdict.*'" Id. (emphasis added) (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)); see also Griffin, 717 N.E.2d at 79–80.

We acknowledge that Richardson's application was recently expanded in Garrett v. State, 992 N.E.2d 710 (Ind. 2013). We held "that the 'actual evidence test' announced in [Richardson] is applicable to cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury." Id. at 714. Cleary contends that Garrett supports his position. Again we disagree.

In Garrett, a woman was raped at least twice by a man later identified as Garrett. Garrett was charged with multiple counts, including two counts of rape. A jury found him not guilty on one of the rape counts but deadlocked on the second. He was then retried on the deadlocked rape count and found guilty. Garrett later sought post-conviction relief, alleging that he received ineffective assistance of counsel because his trial counsel failed to object to the second trial on double jeopardy grounds and his appellate counsel failed to raise a double jeopardy argument on appeal. Id. at 718. Garrett's PCR court denied his petition and the Court of Appeals affirmed. Id.

We recognized that the majority of double jeopardy claims arise when defendants challenge multiple convictions, rather than a second trial after an acquittal. But that generalization did not exclude Garrett's case from consideration as to "whether two offenses are the same offense when there is an acquittal on one offense and retrial on another offense." Id. at 720. Instead, we found Article 1, § 14 to still apply in that circumstance. Id. at 721.

14

We therefore extended <u>Richardson</u>'s actual evidence test and held that, in a case like Garrett's where a defendant is charged with two offenses and acquitted of one and deadlocked on the other, a double jeopardy violation may occur if "there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted." <u>Id.</u> at 723. And we then found just such a violation; there was sufficient evidentiary overlap on the rape counts between the first and second trials that there was a reasonable possibility that evidence used by the jury to acquit Garrett on one rape count in the first trial was used by the judge to find him guilty of rape in the second trial. <u>Id.</u>

The conclusion that the actual evidence test applied was consistent with one of the rationales for double jeopardy protections: to ensure that "'the State will not be allowed to make *repeated attempts to convict* an accused for the same offense.'" <u>Id.</u> at 721 (quoting <u>Thompson v. State</u>, 259 Ind. 587, 591, 290 N.E.2d 724, 726 (1972)). "Having had one full opportunity to convict an accused, the State should not receive a 'second bite at the apple.'" <u>Garrett</u>, 992 N.E.2d at 721. "In other words, double jeopardy protection prohibits twice subjecting an accused to the risk that he will be convicted of a single crime." <u>Id.</u> But for several reasons, <u>Garrett</u> does not invite or compel application of either of <u>Richardson</u>'s tests to Cleary's case.

For one thing, <u>Garrett</u> involved two distinct rapes. Garrett could have been convicted and sentenced for both—with no double jeopardy implications at all—or potentially convicted and sentenced twice for the same rape or acquitted and then retried and convicted for the same rape—both outcomes being violative of double jeopardy protections. Here, though, there was only one act of drunk driving for which Cleary could be convicted. <u>Garrett</u> thus addressed concerns not present in Cleary's case at all.

Second, the double jeopardy issue in <u>Garrett</u> was not the retrial itself. The violation flowed from the *evidence* used in the retrial because it raised the possibility that Garrett was convicted based on the facts underlying the rape for which he had previously been acquitted (and

15

for which he could not be retried) and not the rape on which the jury deadlocked. In essence, there was a chance that the State got an impermissible second bite at the acquitted charge. That is not a concern here because Cleary was not acquitted or convicted on Counts I, II, or III at his first trial. His jury deadlocked, and the State may continue to pursue prosecutions after a hung jury.

Notwithstanding the important double jeopardy protections accorded by both the Indiana and U.S. Constitutions, we must also "accord[] recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." Griffin, 717 N.E.2d at 79 (quoting Arizona v. Washington, 434 U.S. 497, 509 (1978)). This means that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade, 336 U.S. at 689. This is just such an instance.

### Conclusion

Cleary's first jury's deadlock on the most serious of his charges, paired with its finding of guilt as to the lesser offenses, did not equate to an implied acquittal of those more serious offenses under Indiana Code § 35-41-4-3, nor did it violate the Indiana Constitution's double jeopardy protections to retry Cleary on the greater offenses upon which the jury was deadlocked. We therefore affirm his convictions and sentence.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.

16