

FILED

Jul 05 2018, 5:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Corey Bullock, *Appellant-Defendant,* | July 5, 2018 |
| v. | Court of Appeals Case No. 49A05-1706-CR-1247 |
| | Appeal from the Marion Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Kurt Eisgruber, Judge |
| | Trial Court Cause No. 49G01-1412-MR-53684 |

**Vaidik, Chief Judge.**

## Case Summary

[1]     Corey Bullock was charged with three counts relating to the death of his girlfriend's infant daughter: murder, aggravated battery, and neglect of a dependent. The jury hung on the murder count but found him guilty on the

other counts. Following the trial court's declaration of a mistrial on the murder count, the court allowed the State to retry Bullock on all three counts, and the court found him guilty of murder and neglect in a bench trial.

[2] Bullock now appeals, arguing that the trial court entered judgment of conviction after the first trial and the State was therefore barred from retrying him according to the statutory double-jeopardy principles discussed by the Indiana Supreme Court in *Cleary v. State*, 23 N.E.3d 664 (Ind. 2015). Although there are Chronological Case Summary (CCS) entries from the last day of the jury trial that include the word "Judgment," the court clarified shortly thereafter that it had **not** actually entered judgment of conviction. Because there was no judgment of conviction, the State was not barred from retrying Bullock on all three counts. We therefore affirm the trial court.

## Facts and Procedural History

[3] In July 2014, Bullock moved in with Apryl Hammer and her infant daughter, Aiva McGee, in an Indianapolis apartment. Bullock, who was not the father of Aiva, cared for Aiva while Hammer worked. On September 30, Hammer went to work and left nine-month-old Aiva in Bullock's care. Shortly after Hammer left for work, Aiva stopped breathing. Bullock called his mother, who then called 911. Aiva, who was covered in bruises, was taken to Riley Hospital for Children and placed on life support. Testing revealed that Aiva had experienced a "significant and severe brain injury." Tr. Vol. III p. 89. She had subdural and subarachnoid hemorrhages on both sides of her head and retinal

hemorrhages behind her left eye. Aiva also had a lacerated liver and rib fractures that were in the healing stages. Aiva was taken off life support and passed away on October 2. The cause of death was blunt-force injury of the head. The police interviewed Bullock, and he denied inflicting the injuries on Aiva. Rather, he claimed that Aiva "bang[ed] her head a lot" when she crawled and moved around. *Id.* at 163. Bullock also said he had never seen Hammer harm Aiva. *Id.* at 165.

[4] In December 2014, the State charged Bullock with three counts in connection with Aiva's death: Count I: murder, Count II: Level 3 felony aggravated battery, and Count III: Level 3 felony neglect of a dependent resulting in serious bodily injury.[1] Bullock's jury trial was held from October 31 to November 2, 2016. After several hours of deliberations on November 2, the jury told the trial court that it could not reach a verdict on the murder count but that it had reached verdicts on the other counts. The jury found Bullock guilty on Counts II and III, and the trial court declared a mistrial as to Count I and set a "pretrial conference" to discuss how to proceed given the jury's verdicts. Supp. Tr. Vol.

---

[1] The charging information for Level 3 felony neglect of a dependent resulting in serious bodily injury alleges that Bullock placed Aiva in a situation that endangered her life or health (failed to obtain timely medical attention for her), which resulted in her death. Appellant's App. Vol. II pp. 39, 147. According to the neglect statute, the offense can be elevated to a Level 1 felony based on the death of a dependent less than fourteen years old but only if the defendant is at least eighteen years old. *See* Ind. Code § 35-46-1-4(a), (b)(3). Bullock was seventeen years old at the time of Aiva's death.

Hammer, who was twenty-two years old at the time of Aiva's death, was charged with murder, Level 3 felony aggravated battery, and Level 1 felony neglect of a dependent resulting in death. She pled guilty to Level 1 felony neglect of a dependent and was sentenced to thirty years, with twenty years executed and ten years suspended. Ex. 74.

IV p. 3. Neither party asked the court to enter judgment of conviction on Counts II and III, and the trial court did not orally do so either. In fact, the court never used the word "judgment" or "conviction." *Id.* at 2-5. And as Bullock concedes on appeal, there is "[n]o written judgment . . . in the record" entering judgment of conviction on Counts II and III. Appellant's Br. p. 17. The following entries, however, appear in the CCS:

| | |
|---|---|
| 11/02/2016 | Judgment Entry on Jury Verdict<br>Order Signed: 11/02/2016 |
| 11/02/2016 | Hearing Journal Entry<br>*jury cannot reach decision as to count 1* |
| 11/02/2016 | Judgment (Judicial Officer: Eisgruber, Kurt)<br>2. 35-42-2-1.5/F3:Aggravated Battery Use when the assault posses a substantial risk of death.<br>Finding of Guilty<br>3. 35-46-1-4(a)(1)/F3: Neglect of a Dependent Resulting in Serious Injury but resulting in serious bodi<br>Finding of Guilty |

Appellant's App. Vol. II p. 17.

[5]     The pretrial conference was held the following week "to determine a direction" for the case. Supp. Tr. Vol. IV p. 9. The court reiterated that there were "guilty findings" (not "convictions") for "two of the three counts." *Id.* The trial court asked the State how it wanted to proceed, and the prosecutor responded, "Judge, we would like the murder count to be reset for trial [because] the State does intend to move forward with trial." *Id.* Defense counsel said she planned to file a motion to dismiss raising "double jeopardy." *Id.* The court set a trial date for a few months out and said it would hold a hearing on the double-jeopardy issue once both sides briefed the issue.

[6]     Defense counsel then filed a motion to dismiss alleging that "[d]ouble jeopardy precludes retrial of the Defendant on Count I, Murder, due to the **conviction** of the lesser included offense of Count II, Aggravated Battery." Appellant's App. Vol. II p. 186 (emphasis added). The State filed a response arguing that there was no double-jeopardy violation in retrying Bullock because the trial court had not yet entered judgment of conviction. *Id.* at 199. Accordingly, the State argued that *Cleary* controlled this case. *Id.* at 202-03.

[7]     In *Cleary*, the defendant was charged with, among other things, Count I: felony operating a motor vehicle with a BAC of at least 0.15 causing death, Count II: felony operating a motor vehicle while intoxicated causing death, Count III: misdemeanor operating a motor vehicle with a BAC of at least 0.15, Count IV: misdemeanor operating a motor vehicle while intoxicated in a manner that endangers a person, and Count V: misdemeanor operating a motor vehicle while intoxicated. The jury reached verdicts of guilty on Counts IV and V but deadlocked on Counts I-III. The defendant was retried on all counts, and the jury found him guilty on Counts I-V; the trial court entered judgment of conviction on Count I only. The defendant appealed, arguing that retrying him violated Indiana's statutory double-jeopardy protections, specifically, Indiana Code section 35-41-4-3. Section 35-41-4-3(a) provides that a prosecution is barred if (1) there was a former prosecution of the defendant "based on the same facts and for commission of the same offense" and (2) "the former prosecution resulted in an acquittal or a **conviction** of the defendant (A **conviction** of an included offense constitutes an acquittal of the greater offense,

even if the conviction is subsequently set aside.).'' (Emphases added). Our Supreme Court found no statutory double-jeopardy violation in *Cleary* because the trial court had not entered judgment of conviction on Counts IV and V: ''It is unequivocal that if the trial court had entered a judgment of conviction for those lesser-included misdemeanors, [Section] 35-41-4-3(a) would have barred the State from retrying Cleary on Counts I, II and III.'' 23 N.E.3d at 668.[2] Our Supreme Court explained that a guilty verdict and a judgment of conviction are ''two rather different things.'' *Id.* (quotation omitted). In other words, a guilty verdict is only a significant legal event ''if a court later enters judgment on it.'' *Id.* Because the trial court had not entered judgment of conviction on the lesser-included offenses, our Supreme Court found that retrial was permissible.

[8]    A hearing on Bullock's motion to dismiss was held in December 2016. At the hearing, the trial court asked defense counsel how she could ''defeat *Cleary*.'' Tr. Vol. II p. 87. Defense counsel responded that ''**even though judgment of conviction wasn't formally entered**,'' it had been for ''all intents and purposes.'' *Id.* at 89 (emphasis added). Defense counsel argued that the November 2 CCS entries coupled with the fact that the trial court had file-stamped the signed jury-verdict forms for Counts II and III had ''the effect of

---

[2] The defendant also argued that there was a violation of Indiana's constitutional double-jeopardy protections. However, our Supreme Court had this to say about the defendant's constitutional argument: ''To an extent, then, our conclusion that Indiana Code § 35-41-4-3(a) does not apply to Cleary's case necessarily sounds a death knell for this argument.'' *Cleary*, 23 N.E.3d at 673. Although Bullock makes both arguments here as well, he does not claim that Indiana constitutional double-jeopardy principles provide him with more protection than the statute.

judgment of conviction." *Id.* In February 2017, the court entered an order denying Bullock's motion to dismiss. The court found, in part:

> In *Cleary*, [the Indiana Supreme Court] distinguishes jury verdicts from convictions. Jury verdicts only gain . . . legal significance when a judgment of conviction is entered by the Court. Here, the jury rendered a verdict on November 2, 2016. **However, to date, despite the CCS entry on November 2, this Court has not entered judgment of conviction on the verdicts rendered.**

Appellant's App. Vol. II p. 216 (emphasis added, citation omitted). The court explained why the entries appeared in the CCS in the first place:

> On November 2, 2016, the following entry was made by Court One on Odyssey: "Judgment Entry on Jury Verdict." This entry was followed by a separate entry "Judgment" followed by the counts reflecting the guilty verdicts of the jury. This post trial entry had been standard operating procedure for Court One. Going forward, the second entry will be clarified to reflect the jury verdict only. Regardless, without exception, this Court has set jury verdicts for sentencings at which time judgments of conviction are entered.

*Id.* at 214 n.1.

[9] Bullock then waived his right to a jury trial and was retried on all three counts in March 2017. The trial court found him guilty on Counts I and III but not guilty on Count II. The court sentenced Bullock to concurrent terms of fifty years (with the final four years to be served on community corrections) for Count I and 545 days for Count III, which the court reduced from a Level 3 to a Level 6 felony.

[10] Bullock now appeals.

# Discussion and Decision

[11] Relying on the holding from *Cleary* that if a trial court enters judgment of conviction, retrial for the same offense is barred, Bullock argues that the trial court entered judgment of conviction for aggravated battery (which is the "same offense" as murder) and the State was therefore barred from retrying him.[3]

[12] Bullock's argument, however, fails at the start because we find that the trial court did not enter judgment of conviction after the first trial. In support of his claim that judgment of conviction had been entered, Bullock relies on the November 2 CCS entries. Notably, the parties did not ask the trial court to enter judgment of conviction, the court did not orally do so, and there is no written judgment doing so (even though the CCS says that there is). The court then scheduled a "pretrial conference," which indicates that it was contemplating the possibility of a second trial. At the beginning of that conference, the court reiterated that there were "guilty findings" (not "convictions") for two of the counts and said that the parties were there to determine "a direction" for the case, which indicates that nothing formal or

---

[3] Bullock concedes that the implied-acquittal doctrine does not apply to this case because "the jury expressly stated it was unable to reach a verdict on Count I, murder." Appellant's Br. p. 28 n.6; *see Cleary*, 23 N.E.3d at 671-72 ("Indiana Code § 35-41-4-3(a)(1) codifies the implied acquittal doctrine, but nothing in the statute expands the doctrine to include circumstances where the jury affirmatively states that it has deadlocked on the greater offense. Accordingly, because the jury affirmatively deadlocked on the greater offenses at Cleary's first trial rather than remaining silent as to those counts, Section 35-41-4-3(a)'s implied acquittal provision is not implicated." (footnotes omitted)).

final had been done yet.  Moreover, at the motion-to-dismiss hearing, defense counsel conceded that judgment of conviction hadn't been "formally entered." Tr. Vol. II p. 89.  The court then clarified that it had **not** entered judgment of conviction, notwithstanding the November 2 CCS entries.

[13]  Nevertheless, Bullock claims that because we have said the CCS is an official record of the trial court and the court speaks through its docket, *see Caruthers v. State*, 58 N.E.3d 207, 210 n.2 (Ind. Ct. App. 2016), we should "find the CCS accurately reflected what happened in the trial court," Appellant's Reply Br. p. 8.  But even if we were to treat the November 2 CCS entries as an entry of judgment, the trial court made clear that it was a mistaken entry because it did not actually enter judgment of conviction, and Bullock cites no authority that would prevent the court from going back and fixing its mistake.  *See* Ind. Trial Rule 60(A) ("Of its own initiative or on the motion of any party and after such notice, if any, as the court orders, clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the trial court at any time before the Notice of Completion of Clerk's Record is filed . . . .").  It is true that *Cleary* provides that had the trial court "entered a judgment of conviction" for the lesser-included offenses, the State would have been barred from retrying the defendant on the greater offenses.  23 N.E.3d at 668.  However, the point our Supreme Court was making is that there can't be a retrial on the greater offenses when there is a judgment of conviction on the lesser-included offenses.  The Court did **not** say that retrial is barred if judgment of conviction is erroneously entered but then

quickly vacated. Therefore, even if it could be said that the November 2 CCS entries in this case amounted to an entry of judgment by the trial court on Counts II and III, the court promptly vacated that judgment, and the State was not barred from retrying Bullock on Counts I-III.[4]

Affirmed.

Pyle, J., and Barnes, Sr. J., concur.

---

[4] In light of this holding, we do not address Bullock's argument that aggravated battery and murder are the "same offense."