# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 19 2021, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Kenneth W. Guy,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 19, 2021

Court of Appeals Case No.
19A-CR-2756

Appeal from the Brown Circuit Court

The Honorable Mary Wertz, Judge

Trial Court Cause No.
07C01-1609-F3-384

**Altice, Judge.**

# Case Summary

Following two jury trials, Kenneth Guy appeals his convictions for Level 3 felony aggravated battery and Class A misdemeanor resisting law enforcement, raising the following two restated issues:

> I. Were Guy's state constitutional double jeopardy rights violated when he was retried and convicted of aggravated battery because, in a prior trial, he had been acquitted of attempted murder that he claims was based on the same conduct as that supporting the aggravated battery conviction?
>
> II. Did the trial court err when it denied Guy's motion for discharge pursuant to Ind. Criminal Rule 4(B)?

We affirm.

# Facts and Procedural History

Guy and his younger brother, David, who was a drug addict, did not have a good relationship. After their mother died, they lived in her residence in Nashville, Indiana. However, at some point, David kicked Guy out of the house. On September 6, 2016, Guy was back at the residence retrieving some of his items. While David was eating dinner on the front porch steps, Guy opened the door and shot at David with a rifle, injuring him, and thereafter clubbed David in the head with an aluminum baseball bat. David fell to the ground in the yard, and Guy left.

Shortly thereafter, David's friend, Randy Cole, who was walking away from the residence, came to David's aid. After trying unsuccessfully to call 911, Cole

drove a mile or less to his home, where his mother called 911. Police located Guy, and he initially ran from police but was eventually apprehended. David survived, suffering a bullet wound and lacerations to his head. Due to risks associated with removing the bullet fragments, they were left in his head. David continued to suffer blurred vision, headaches, and other problems after the incident.

[5] On September 9, 2016, the State charged Guy with Level 3 felony aggravated battery, Level 6 felony criminal recklessness, and Class A misdemeanor resisting law enforcement. On September 12, the trial court held an initial hearing at which a plea of not guilty was entered, and counsel was appointed to represent him. On September 19, a public defender entered an appearance on Guy's behalf.

[6] On September 26, Guy filed a pro se letter with the court, requesting a new public defender because of a claimed conflict of interest and asking for a "fast and speedy" trial. *Appellant's Appendix Vol. 2* at 46. The CCS entry did not mention Guy's request for a speedy trial, indicating only that the communication concerned counsel appointment. On October 13, the trial court issued an order setting the correspondence for a hearing on October 31, and it provided a copy of Guy's letter to defense counsel. The State did not receive a copy of Guy's September 26 correspondence.

[7] At the October 31, 2016 hearing, the trial court addressed having received the written communication from Guy that asserted a conflict with counsel and

"also included a request for a speedy trial." *Supp. Tr. Vol. 2* at 4; *Appellant's Appendix Vol. 2* at 81. The court indicated, "[A]t that point, we already had an appearance in by [defense counsel], so any requests for a speedy trial needs to come through counsel."[1] *Id.* Guy's counsel acknowledged that she was aware of Guy's desire for a speedy trial and stated that because the trial was already set for November 30, 2016, which was within seventy days of his request, she did not believe it was necessary for her to take further action.[2] Guy indicated acceptance of his counsel at the hearing and withdrew his request for replacement counsel.

[8] At the November 14 final pretrial conference, the State moved to continue the trial because the prosecutor would be out of state and unable to try the case on November 30, 2016, and Guy objected. The State's plea offer to Guy was addressed at the pretrial conference and included in the court's pretrial order, which showed that the offer was: Guy would plead open to aggravated battery and the rest of the charges would be dropped, otherwise the State intended to file an attempted murder count on November 18. The court took the State's motion to continue under advisement pending review of Guy's speedy trial

---

[1] Prior to the October 31 hearing, Guy again requested different counsel, as well as a different prosecutor and judge. Although repeatedly informed that he needed to speak through counsel so long as he was represented by counsel, Guy continued through the span of the case to contact the court directly on multiple occasions.

[2] Seventy days from the September 26, 2016 request was December 5, 2016.

request. On November 14, Guy again requested appointment of different counsel.

[9] On November 17, the court denied the State's motion to continue, finding that the chief deputy prosecutor could try the case and noting that Guy had asserted a request for a speedy trial. Regarding such request, the trial court specifically found: (1) that it had informed Guy and defense counsel that his request for a speedy trial needed to be made through his counsel, but that the State had not filed a motion to strike the request, and (2) that Guy had repeatedly asserted his desire for a speedy trial, and objected to any continuance beyond the seventy-day limit, which was affirmed by counsel, though counsel did not file a Crim. R. 4 motion because the trial was already set for November 30, 2016, within the speedy trial time frame.

[10] On November 18, 2016, the State moved to amend the charging information to add a charge of Level 1 felony attempted murder, and Guy objected. On November 21, the State filed a brief in support, asserting that the amendment did not impede Guy's ability to present a defense because there were no new witnesses, no new locations, no new affirmative acts, and "the allegation contained in Count 1: Aggravated Battery has simply been magnified to reflect an attempt to kill the same victim in Count I."[3] *Appellant's Appendix Vol. 2* at 91. The motion noted that while Guy "apparently" had made a speedy trial

---

[3] The record reflects that proposed amendment to add a charge of attempted murder had been discussed with Guy's counsel as early as October 31.

request, "the State [] has **not seen** such a request." *Id*. at 90. On November 21, the State also filed a motion to strike Guy's September 26 speedy trial request that the State became aware of at the October 31 hearing.

[11] On November 22, following a hearing, the trial court granted the State's motion to amend, but denied the State's motion to strike Guy's speedy trial request, indicating that trial remained set for November 30. On November 23, the court held an initial hearing on the amended information. Guy made an oral motion to continue trial, which was granted over the State's objection. The State filed a motion to reconsider the denial of its motion to strike Guy's pro se request for a speedy trial, which the court set for hearing on November 30. On November 30, Guy filed a motion requesting a determination of which party should be charged with the delay caused by the continuance and filed a "Motion to be Released," seeking discharge.[4] *Appellant's Appendix Vol. 2* at 9.

[12] The court issued an order on December 7, 2016, covering various pending matters. The trial court granted the State's motion to reconsider and struck Guy's September 26, 2016 request for a speedy trial because it had been "improperly filed directly by defendant when he was represented by counsel" and the State had no notice of the request until October 31, 2016, when defense counsel adopted Guy's request. *Id.* at 123. The court found that in such

---

[4] Also on November 30, Guy's counsel requested that another public defender be appointed due to her resignation. On December 1, the court appointed replacement counsel, who declined appointment. On December 9, the court appointed replacement counsel for Guy.

circumstances it would be "patently unfair to the State to hold it to a speedy trial demand of which it never had notice until more than 30 days after it was 'filed.'" *Id.* at 123-24. The trial court concluded that Guy's Crim. R. 4(B) speedy trial right "was triggered as of October 31, 2016" and ordered trial to be reset to January 3, 2017, which was within seventy days of October 31. *Appellant's Appendix Vol. 2* at 124. Because it struck the September 26, 2016 pro se speedy trial request, the court denied Guy's Motion to be Released. Guy moved to withdraw his previous motion to continue, which the trial court denied, observing that the motion to continue was granted in open court and that the court acted accordingly by not proceeding to trial on November 30. The court charged the delay resulting from the continuance to Guy. On December 20, 2016, Guy withdrew his request for an early trial and requested a continuance. *Id.* at 11, 135.

[13]    In 2017, competency and sanity evaluations occurred, both of which found Guy competent to stand trial and determined that he was able to appreciate the wrongfulness of his actions at the time of the alleged offense. In mid-2018, Guy petitioned for the appointment of a special prosecutor, which was ultimately denied. In November 2018, he filed a notice of insanity defense and requests for an additional competency evaluation, for appointment of new counsel, and for a continuance. The court ordered the additional evaluation, which found Guy competent to stand trial. The court did not appoint new counsel, and Guy withdrew his insanity defense.

[14] The first jury trial occurred March 18-22, 2019. The jury returned a guilty verdict on the criminal recklessness and resisting law enforcement charges, and a not guilty verdict on the attempted murder charge. The jury was unable to reach a verdict on the aggravated battery charge. The trial court entered judgment of acquittal on the attempted murder charge but did not enter judgment of conviction on the criminal recklessness and resisting law enforcement verdicts "due to the necessity of scheduling a new trial" on the aggravated battery charge. *Appellant's Appendix Vol. 3* at 94.

[15] A second jury trial on the aggravated battery charge was held on September 23-26, 2019. The jury found Guy guilty of that offense. On October 24, 2019, the trial court entered convictions for Level 3 felony aggravated battery and Class A misdemeanor resisting law enforcement; it did not enter judgment of conviction on the criminal recklessness guilty verdict due to double jeopardy concerns. The court sentenced Guy to concurrent terms of thirteen years and one year on his two convictions. He now appeals. Additional facts will be provided below as necessary.

## Discussion & Decision

## I. Retrial on Aggravated Battery

[16] Guy contends that his state constitutional double jeopardy protections were violated by his retrial and subsequent conviction for aggravated battery. Guy's position is that his acquittal on the attempted murder charge precluded relitigation and conviction of the aggravated battery charge because it stemmed

from "the very same conduct," namely attacking David by shooting him in the head and/or striking him in the head with a bat. *Appellant's Brief* at 21. He urges that the second trial and conviction ran afoul of the actual evidence test enunciated by our Supreme Court in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999).[5] We review Guy's challenge de novo. *Cleary v. State*, 23 N.E.3d 664, 668 (Ind. 2015).

[17] We first observe that, "[g]enerally speaking, retrial following a hung jury does not violate the Double Jeopardy Clause." *Hoover v. State*, 918 N.E.2d 724, 733-34 (Ind. Ct. App. 2009) (citing *Richardson v. United States*, 468 U.S. 317, 324 (1984) and *Young v. State*, 482 N.E.2d 246, 249 (Ind. 1985) ("It is well settled that a hung jury operates to discharge the operation of double jeopardy and a new trial is not barred in such a situation.")), *trans. denied*. This is so because, under the doctrine of continuing jeopardy, "a defendant who is retried following a hung jury is not placed in jeopardy twice for the same offense, because the initial jeopardy that attaches to a charge is simply suspended by the jury's failure to reach a verdict." *Cleary*, 23 N.E.3d at 673 (quoting *Davenport v. State*, 734 N.E.2d 622, 625 (Ind. Ct. App. 2000)). "Furthermore, '[t]he

---

[5] We recognize that, recently, our Supreme Court issued two opinions that significantly altered the approach to claims of substantive double jeopardy – those claims of double jeopardy that are based on multiple convictions in a single prosecution. *See Wadle v. State*, 151 N.E.3d 227 (Ind. 2020) and *Powell v. State* 151 N.E.3d 256 (Ind. 2020). The *Wadle* Court noted that its holding did not extend to claims of "procedural double jeopardy"—where a defendant is charged with the same offense in successive prosecutions. 152 N.E.3d at 244 n.15 ("Because Wadle's case presents no question of procedural double jeopardy, we expressly reserve any conclusion on whether to overrule *Richardson* in that context.").

Government, like the defendant, is entitled to resolution of the case by verdict from the jury.'" *Id*. (quoting *Richardson*, 468 U.S. at 326.)

[18] Guy claims, however, that his state constitutional double jeopardy rights were violated because the same evidence was used to convict him of aggravated battery in the second trial as had been used to acquit him of attempted murder in the first trial. In this regard, Guy directs us to *Garrett v. State*, 992 N.E.2d 710, 714 (Ind. 2013), where our Supreme Court expanded the reach of *Richardson*'s actual evidence test[6] to cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury.

[19] In *Garrett*, the defendant was charged with multiple counts, including two separate, but identically worded, counts of rape. At his first trial, evidence was presented of the two separate incidents of rape. The jury found him not guilty on the first-occurring rape (Rape A) but deadlocked on the second (Rape B). When he was retried on the deadlocked rape count, the State presented evidence of both alleged rapes, and he was found guilty. After his conviction was affirmed on direct appeal, Garrett sought post-conviction relief, arguing that his trial and appellate counsel provided ineffective assistance by failing to challenge alleged violations of double jeopardy protections. The trial court denied post-conviction relief, we affirmed on appeal, and our Supreme Court

---

[6] Under the *Richardson* actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53.

accepted transfer.  *Garrett v. State*, 965 N.E.2d 115 (Ind. Ct. App. 2012), *trans. granted*.

[20]    The Court found, first, that retrial on the second rape count, upon which the jury had deadlocked, was not procedurally barred.  Then, as a matter of first impression, it recognized a "slightly modified" *Richardson* actual evidence test and held that a double jeopardy violation may occur on retrial if "there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted."  *Garrett*, 992 N.E.2d at 723. The Court concluded that a violation had occurred in that case because, on retrial, "the State presented the same evidence of Rape A—the first-in-time rape—on which the State relied in the first trial and upon which the jury found Garrett not guilty" but presented very little evidence "concerning Rape B—the second-in-time rape," which all parties had agreed was at stake on retrial.  *Id*. Given that record, the Court concluded that "there is reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of Rape for which Garrett was

convicted[,]" and thus Garrett "was twice prosecuted for the same offense[.]"[7]
*Id.*

[21] Here, Guy argues that, similar to *Garrett*, "[t]here was more than a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of attempted murder, of which Guy was acquitted, and aggravated battery, of which was convicted, were the same." *Appellant's Brief* at 15. We find, however, that *Garrett* presents a different scenario from that before us and does not lead us to the conclusion that a double jeopardy violation occurred. Unlike in *Garrett,* the State in the present case did not get a second bite at an acquitted charge. In other words, Guy was not put in jeopardy of being twice prosecuted for the same offense, here attempted murder, after first being acquitted of it.

[22] We find that Guy's case is more akin to the situation presented in *Cleary*, where the defendant drank alcohol, drove, and collided with a service vehicle parked on the side of the road, killing a man. Cleary was charged with five criminal counts and three infractions, all stemming from the one collision. The jury found that Cleary was guilty of Counts IV and V, which were misdemeanors, and had committed the infractions alleged in Counts VI and VII, but it deadlocked on Counts I, II, and III, which were two felonies and a Class A

---

[7] Although it found a double jeopardy violation, the Court affirmed the denial of post-conviction relief, finding that neither trial counsel nor appellate counsel provided ineffective assistance. *Garrett*, 992 N.E.2d at 723-24.

misdemeanor. That is, the jury reached a verdict of guilty on the lesser-included OWI misdemeanors but deadlocked on the greater offenses that required proof that Cleary caused the victim's death and proof of a BAC greater than .15. No judgment of conviction was entered, and Cleary was retried on all eight counts and found guilty of Counts I-V and liable for Counts VI and VII, and he admitted to Count VIII. The trial court entered judgment of conviction on Count I, Class B felony Causing death when operating a motor vehicle with a BAC of at least 0.15, and Counts VI, VII, and VIII, three infractions. Cleary appealed, arguing, among other things, that his second prosecution should have been barred by double jeopardy, and this court affirmed his convictions.

[23]    The Supreme Court granted transfer and, as is relevant here, addressed Cleary's Indiana constitutional double jeopardy claim that his retrial on the greater offenses violated *Richardson's* statutory elements and actual evidence tests. The *Cleary* Court explained, "[W]e do not believe the tests apply at all[,]" and, rather, "the doctrine of continuing jeopardy applies to retrial of the greater offenses" upon which the jury had been deadlocked. *Cleary*, 123 N.E.3d at 673. It found that although Cleary's second trial exposed him to "jeopardy," it was not a new jeopardy distinct from his first trial. *Id*. The *Cleary* Court acknowledged *Garrett's* expansion of the actual evidence test to cases of retrial following acquittal and deadlocked charges, but found that *Garrett* "does not invite or compel application of either of *Richardson's* tests to Cleary's case" because (1) *Garrett* involved two distinct rapes whereas in Cleary's case "there was only one act of drunk driving for which Cleary could be convicted[,]" and

(2) the evidence used in the retrial raised the possibility that Garrett was convicted based on the facts underlying the rape for which he had been previously acquitted – giving the impermissible second bite at the apple – which was not a concern in Cleary's case because "he was not acquitted or convicted on Counts I, II, or III at his first trial." *Id*. at 675. "His jury deadlocked, and the State may continue to pursue prosecutions after a hung jury." *Id.* This is what occurred here as well, with the State pursuing a second prosecution for aggravated battery after the jury hung on that charge.

[24] Alternatively, Guy argues that collateral estoppel precluded the State from retrying him, asserting that the jury already made a determination about "the issues of Guy's intent and the conduct he engaged in" and that the State could not relitigate those matters in a second trial. *Appellant's Brief* at 24. We have recognized that the doctrine of collateral estoppel (also referred to as issue preclusion) is not the same as double jeopardy, "but rather is embodied within the protection against double jeopardy." *Harris v. State*, 9 N.E.3d 679, 683 (Ind. Ct. App. 2013) (quoting *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011)), *trans. denied*. "[T]he traditional bar of jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, simply forbids the government from relitigating certain facts in order to establish the fact of the crime." *Id*. (internal quotation omitted). Essentially the doctrine of collateral estoppel "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id.* (quoting *Yeager v. United States*, 557 U.S. 110, 119 (2009)).

[25] Contrary to Guy's suggestion, the State was not relitigating an issue "that was necessarily decided by the jury's acquittal in a prior trial." *Id*. Although it acquitted Guy of attempted murder, the jury did not conclude that the State failed to prove that he shot and/or clubbed David, as reflected by the guilty verdict for Level 6 felony criminal recklessness, which required the jury to find that Guy performed an act with a deadly weapon that created a substantial risk of bodily injury to David. *See* Ind. Code § 35-42-2-2(b)(1)(a). Rather, it is apparent that the jury simply found that the State failed to prove beyond a reasonable doubt that Guy did not act with specific intent to kill David. *See* I.C. §§ 35-42-1-1(1) and 35-41-5-1(a); *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015) (conviction for attempted murder requires proof of specific intent to kill). On the other hand, the jury was unable to reach a unanimous decision regarding whether he knowingly or intentionally inflicted injury on David that created a substantial risk of death. *See* I.C. § 35-42-2-1.5.

[26] For all the above reasons, we find that neither double jeopardy nor collateral estoppel precluded his conviction for aggravated battery in a second trial. *See Harris*, 9 N.E.3d at 686 (neither *Garrett*'s actual evidence test nor collateral estoppel barred retrial after a hung sexual misconduct charge and rape acquittal) and *Hoover*, 918 N.E.2d at 734 (defendant's acquittal of murder in first trial did not bar his retrial on felony-murder charge after jury was deadlocked on felony-murder in first trial).

# II. Speedy Trial

[27] Guy argues the trial court erred when it denied his November 30, 2016 motion that sought release or discharge[8] based on his pro se correspondence filed on September 26, 2016 that asked for a "fast and speedy trial." *Appellant's Appendix Vol. 2* at 46. The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial. *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution. *Id*.

[28] Crim. R. 4(B)(1) provides, in part, that if a defendant moves for an early trial, he shall be discharged if not brought to trial within seventy calendar days from the date of such motion. Our Supreme Court has stated that, "once counsel [is] appointed, [a d]efendant sp[eaks] to the court through counsel." *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). In that situation, a trial court is not required to accept the petition and may strike it. *See id*.; *see also Schepers v. State*, 980 N.E.2d 883, 887 (Ind. Ct. App. 2012) (trial court properly denied defendant's motion to dismiss under Crim. R. 4(B)(1) where he had filed motion pro se while represented by counsel).

---

[8] Guy asserts that, although his motion used language asking for "release" rather than "discharge," the nature of the request was clear and adequately brought his claim to the court's attention. We agree, and our analysis considers it as such.

[29] Our Supreme Court, in addressing the appropriate standard of review of a trial court's decision on a motion for discharge, recognized that "sometimes the trial court must resolve disputed facts, but on other occasions simply applies the law to disputed facts." *Austin*, 997 N.E.2d at 1039. Where, as here, the relevant facts are undisputed and the issue is a question of law, "the standard of review – like for all questions of law – is de novo." *Id.*; *see also Battering v. State*, 150 N.E.3d 597, 600 (Ind. 2020).

[30] In this case, Guy's written correspondence that, among other things, asked for a "fast and speedy trial" was filed on September 26. *Appellant's Appendix Vol. 2* at 46. There is no dispute that he was already represented by counsel at that point and that he knew that he was. The State was not made aware of his speedy trial request until the October 31, 2016 hearing, at which time counsel for Guy confirmed agreement with the request but took no additional action because trial was already set for November 30, within the rule's seventy-day parameters. The State did not receive a copy of the correspondence until the November 21 hearing. Under these facts, we agree with the trial court that, at the earliest, Guy's speedy trial request began to run on October 31, such that the State had until January 9, 2017 to try Guy.

[31] On November 22, the trial court granted the State's motion to amend the charging information and it continued trial to January 3, 2017, which was within seventy days of October 31. Thereafter, on November 30, Guy filed his motion for release, seeking discharge on the basis that he was not brought to trial within seventy days of his September 26, 2016 request. On December 7,

the trial court struck Guy's September 26 request, per the State's motion, and it denied Guy's motion for release/discharge, which he now appeals. We find no error with the court's denial of Guy's motion. As stated, the trial court was within its authority to not recognize his September 26 pro se motion, especially given that the State had no notice of it until over thirty days later, and instead determine that October 31 was the earliest possible start date of his speedy trial request. Thus, as of November 30, when Guy filed his motion, the time to try him had not yet passed, and the court properly denied his motion for discharge. *Stephenson v. State*, 742 N.E.2d 463, 487, n. 21 (Ind. 2001), *cert. denied*, 524 U.S. 1105 (2002) ("It is well established that when a motion for discharge for a Criminal Rule 4 violation is made prematurely, it is properly denied.")

[32] We reject Guy's related claim that the speedy trial request "was not stricken until well after the 70th day from when the request had been made." *Appellant's Brief* at 16. This again is premised on Guy's September 26 request, which we have already found was improper and not effective to begin the proverbial ticking of the Crim. R. 4(B) clock. The trial court did not err when it denied Guy's motion for discharge.

[33] Judgment affirmed.

Mathias, J. and Weissmann, J., concur.