

FILED

Aug 26 2024, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Michael T. Schoeff,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 26, 2024

Court of Appeals Case No.
23A-CR-02163

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-2011-F1-000014

---

**Opinion by Judge Mathias**
Judge Tavitas concurs with separate opinion

**Mathias, Judge.**

The Delaware Circuit Court entered a judgment of conviction against Michael Schoeff for Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death and adjudicated Schoeff a habitual offender. Schoeff appeals, raising two issues, which we restate as:

> I. Whether the trial court erred under the Indiana Constitution and Indiana Code section 35-41-4-3(a) when it allowed the State to retry Schoeff for Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death after the jury in his first trial could not reach a verdict on that charge but did find him guilty of Level 5 felony conspiracy to commit dealing; and,
>
> II. Whether the State presented sufficient evidence to prove that Schoeff committed Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death.

We affirm.

## Facts and Procedural History

In October 2020, Schoeff was romantically involved with Vera Morgan, and Schoeff lived in Muncie. On or about October 10, Matthew Stockton and Mandy Hart, who were also romantically involved and had a child together, arranged to purchase heroin from Morgan. Stockton and Hart traveled to Schoeff's home, and, when they arrived, Schoeff weighed the heroin. Schoeff

then gave the heroin to Morgan, who sold it to Hart. Stockton and Hart injected the heroin while they were still at Schoeff's home. Hart overdosed but was revived with Suboxone that Schoeff gave to Stockton. Morgan then asked Hart and Stockton to leave, which they did.

[3] Hart and Stockton returned to Muncie on October 16. When they arrived, Hart contacted Morgan and arranged to buy more heroin from her. The two agreed to meet at a gas station located at the intersection of Port and Hoyt roads. Hart and Stockton arrived at the gas station first. They saw Schoeff and Morgan pull into the gas station, and Schoeff was driving the vehicle. Schoeff exited the vehicle and entered the gas station storefront. Hart and Stockton then entered Schoeff's vehicle and sat in the back seat while Morgan remained in the front seat. Morgan gave Hart heroin in exchange for $40. After Schoeff exited the gas station, he and Morgan offered Hart and Stockton a ride home.

[4] At Stockton's home, Hart injected Stockton with heroin and then injected herself. Hart then passed out and stopped breathing. Stockton performed chest compressions, and after several minutes, Hart began breathing again but she remained unconscious. Stockton then injected himself again. Sometime later, Hart woke up, and she and Stockton agreed to split the remaining heroin. Hart injected Stockton, and he passed out. When he regained consciousness, Hart was lying face down on the floor. Stockton soon discovered that Hart had died. Hart underwent an autopsy, and the forensic pathologist determined that her cause of death was a fentanyl overdose.

[5] During the investigation of Hart's death, Stockton told law enforcement officers that he and Hart had purchased the heroin from Morgan and Schoeff. Stockton also gave the officers the passcode to Hart's cellphone. Law enforcement officers found text messages between Hart and Morgan detailing transactions between them for the purchase of heroin and syringes.

[6] Schoeff and Morgan were arrested on November 3. Schoeff admitted to the officers that he had used and participated in dealing illegal drugs. However, he denied selling drugs to Hart and Stockton on October 16. He admitted that he saw them at the gas station that day and gave them a ride home. Later, Schoeff confessed that he had sold drugs to Stockton and Hart on October 10. And Morgan's and Schoeff's cell phones contained numerous messages discussing drugs and drug dealing, including selling heroin and fentanyl.

[7] The State charged Schoeff with Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death and Level 5 felony conspiracy to commit dealing in a narcotic drug. Those charges provided in relevant part:

> Count 1
>
> [B]etween October 16, 2020 and October 17, 2020 . . . Schoeff did knowingly aid, induce or cause another person or persons, to-wit: Vera Morgan to commit the crime of Dealing in a Controlled Substance Resulting in Death, which is defined as knowingly delivering a controlled substance in violation of IC 35-48-4-1, and the controlled substance when it was used, injected, inhaled, absorbed or ingested resulted in the death of Mandy Hart . . . .
>
> Count 2

> [B]etween October 16, 2020 and October 17, 2020 . . . Schoeff
> with the intent to commit the felony of dealing in a narcotic drug,
> did agree with another person or persons, to-wit: Vera Morgan
> and/or other unnamed person or persons to commit said crime of
> dealing in a narcotic drug; and in furtherance of said agreement,
> Michael Schoeff or the person or persons with whom he agreed
> did commit one or more of the following overt acts: 1) obtained a
> substance purported to be heron or fentanyl; 2) communicated
> with Mandy Hart; 3) arranged the sale of heroin and/or fentanyl;
> 4) provided heroin and/or fentanyl to Mandy Hart . . . .

Appellant's App. Vol. 2, pp. 163-64. The State also alleged that Schoeff was a habitual offender.

[8] Schoeff's first jury trial commenced on August 22, 2022. During its closing arguments, the State argued that it had proven that Schoeff had aided Morgan to commit dealing in a controlled substance causing death because Stockton testified that he and Hart arranged to meet Schoeff and Morgan to purchase heroin as they had done the weekend prior to October 16. Tr. Vol. 4, p. 14. The State argued that the evidence established that Schoeff and Morgan had used the same gas station as a meeting point to sell drugs in the past. *Id*. at 15. And the State relied on Stockton's testimony that Schoeff drove Morgan to the gas station, and Morgan sold heroin to Hart while they were seated in Schoeff's vehicle at the gas station.[1] *Id*. To prove Count II, the State relied on Schoeff's confession that he was involved in drug dealing with Morgan and messages between their cellphones detailing the drug dealing operation. *Id.* at 9. The jury

---

[1] The jury was instructed that "[t]o aid under the law is to knowingly aid, support, help or assist in the commission of a crime. It is knowingly doing some act to render aid to the actual perpetrator of the crime." Appellant's App. Vol. 2, p. 246. The jury was also given an "accomplice" instruction. *Id*. at 247.

instructions defining the charged offenses were nearly identical to the charges quoted above. *See* Appellant's App. Vol. 2, pp. 210, 219, 240.

[9] The jury found Schoeff guilty of the conspiracy charge, Count II, but could not reach a verdict on Count I, dealing causing death. The trial court entered a judgment of conviction on Count II, and on March 29, 2023, the court imposed a five-year sentence in the Department of Correction.

[10] Thereafter, Schoeff moved to dismiss Count I, arguing that retrial on that charge would violate his double jeopardy rights. The trial court denied Schoeff's motion, and a second jury trial on Count I commenced on April 24. The jury found Schoeff guilty on that Count. The jury also found that Schoeff was a habitual offender.

[11] The trial court held Schoeff's sentencing hearing on August 16. The court vacated Schoeff's conviction for Count II due to double jeopardy concerns.[2] The trial court then imposed a thirty-two-year sentence for Count I, which the court enhanced by twelve years for the habitual offender adjudication, for an aggregate executed sentence of forty-four years.

[12] Schoeff now appeals.

---

[2] The State did not agree with the trial court's decision to vacate the Level 5 felony conspiracy conviction.

## Double Jeopardy

[13]    Schoeff claims that the second prosecution for Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death violated his procedural double jeopardy rights. Specifically, he argues that his Level 5 felony conspiracy to commit dealing conviction was a lesser-included offense of his Level 1 felony conviction; therefore, the second prosecution of the Level 1 felony dealing resulting in death charge was barred by Indiana Code section 35-41-4-3(a) and the Article 1, Section 14 of the Indiana Constitution. Schoeff does not argue that his retrial for the Level 1 felony offense was barred based *only* on the hung jury for that allegation.

[14]    The Indiana Constitution forbids the State from placing a person twice in jeopardy.[3] Ind. Const. Art. 1, § 14. In implementing this principle, Indiana Code section 35-41-4-3(a) provides in pertinent part:

> (a) A prosecution is barred if there was a former prosecution of the defendant *based on the same facts* and for commission of the same offense and if:
>
> (1) the former prosecution resulted in an acquittal or a conviction of the defendant (*A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.*) . . . .

---

[3] Schoeff cites to the Fifth Amendment prohibition against double jeopardy in his Appellant's brief. However, he does not develop any argument under the Fifth Amendment, and, therefore, he has waived any double jeopardy claim under the United States Constitution. *See Denney v. State*, 219 N.E.3d 784, 789 n.3 (Ind. Ct. App. 2023) (citing Ind. Appellate Rule 46(A)(8)(a)).

(Emphases added.) After his first trial, the trial court entered a judgment of conviction against Schoeff for the offense of conspiracy.

[15] Accordingly, to demonstrate that a successive trial is prohibited under that statute, Schoeff argues that the State sought to use the same evidence twice against him for the commission of the same offense—namely, for the purported included offense of conspiracy to commit dealing. In turn, Shoeff asserts that his conviction for that offense acted as an implied acquittal of the aiding, inducing, or causing dealing in a controlled substance resulting in death conviction. *See, e.g.*, *Cleary v. State*, 23 N.E.3d 664, 668 (Ind. 2015) (observing that Indiana Code section 35-41-4-3(a) "incorporates an 'implied acquittal' principle").

[16] An offense may be inherently or factually included in another offense. We therefore first recognize that our case law establishes that Level 5 felony conspiracy to commit dealing charge is not an inherently included offense of Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death. Indiana Code section 35-31.5-2-168 defines an "included offense" as follows:

> "Included offense" means an offense that:
>
>> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>>
>> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

[17] "Indiana treats the offense of conspiracy to commit an offense as a separate crime from the underlying offense because the 'agreement itself constitutes the criminal act.'" *Littlefield v. State*, 215 N.E.3d 1081, 1088 (Ind. Ct. App. 2023) (quoting *Coleman v. State*, 952 N.E.2d 377, 382 (Ind. Ct. App. 2011)); *see also* Ind. Code § 35-41-5-2(b) (providing that the State "must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement"). As the conspiracy and its underlying crime are based on different statutory elements, conspiracy is not inherently included in the underlying crime.

[18] More specifically, conspiracy to deal and accomplice dealing contain distinct statutory elements: the conspiracy count required an agreement and an overt act in furtherance of that agreement, and the accomplice dealing count required the State to prove that Schoeff aided, induced, or caused dealing in a controlled substance that resulted in Hart's death. Appellant's App. pp. 163-64. Accordingly, we disagree with Schoeff's claim that his Level 5 felony conspiracy to commit dealing conviction was procedurally a lesser-included offense to the charge of Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death. Again, Indiana Code section 35-41-4-3(a) bars a second prosecution when there has been an acquittal or a conviction for a lesser-included offense. *See Clearly*, 23 N.E.3d at 670. For these reasons, section 35-41-4-3(a) did not bar a second prosecution for Schoeff's Level 1

felony aiding, inducing, or causing dealing in a controlled substance resulting in death charge.

[19] Next, Schoeff urges us to apply the *Richardson* actual-evidence test and conclude that his conviction for Level 5 conspiracy is factually included in the Level 1 felony allegation. But before we address Schoeff's argument that application of the actual-evidence test formulated in *Richardson v. State* establishes a procedural double jeopardy violation, we observe that the continued viability of that test is uncertain. In *Wadle v. State*, our supreme court overruled the double jeopardy tests "formulated in *Richardson* as they apply to claims of substantive double jeopardy." 151 N.E.3d 227, 244 (Ind. 2020). However, in a footnote, the court observed that the *Richardson* actual-evidence test "applies to the bar against procedural double jeopardy."[4] *Id*. at 244 n. 15. The court then stated that, "[b]ecause Wadle's case presents no question of procedural double jeopardy, we expressly reserve any conclusion on whether to overrule *Richardson* in that context." *Id*.

---

[4] Our supreme court first utilized the *Richardson* test to address a claim of procedural double jeopardy in *Garrett v. State*, 992 N.E.2d 710 (Ind. 2013). However, *Richardson* was a substantive double jeopardy case, and therefore, the entire premise that *Richardson*'s actual-evidence test applies in the procedural double jeopardy context rests on shaky foundations. In *Cleary*, decided approximately sixteen months after *Garrett*, our supreme court declined to apply the *Richardson* actual-evidence test to a procedural double jeopardy claim. *See Cleary*, 23 N.E.3d at 673. In that case, the jury returned a guilty verdict on the lesser offenses and deadlocked on the greater offenses. The trial court did not enter a judgment of conviction on the lesser offenses, and therefore, our supreme court held that under the doctrine of continuing jeopardy, the defendant was not placed in jeopardy twice for the same offense. *Id*. at 673-74.

[20] In *Wadle*, our supreme court thoroughly explained the confusion caused by application of *Richardson*. 151 N.E.3d at 241-43. And earlier this year, the Court doubled-down on *Wadle* in *A.W.*, 229 N.E.3d at 1068, and expressly rejected formulations of the *Wadle* test that effectively "revived" *Richardson*'s actual-evidence test. As for procedural double jeopardy, the *Wadle* Court held that Article 1, Section 14 of the Indiana Constitution "operates only as a procedural bar to successive prosecutions for the same offense." 151 N.E.3d at 237.

[21] Until our supreme court concludes otherwise, we must continue to apply the *Richardson* actual-evidence test to claims of procedural double jeopardy. Morever, regardless of the precise test used to discern if the "same facts" were twice used against Schoeff, our conclusion here is the same: they were not. *See* I.C. § 35-31.5-2-168.

[22] To find a double jeopardy violation under the *Richardson* actual-evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." 717 N.E.2d 32, 53 (Ind. 1999); *see also Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008) (explaining that the existence of a "'reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions"). "The actual evidence test is applied to all the elements of both offenses." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). If the "evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential

elements of a second offense," there is no double jeopardy violation. *Id.* (citing *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)).

[23] Here, both offenses required proof of dealing a controlled substance. But the Level 5 felony conspiracy charge required proof of an agreement between Schoeff and Morgan. During Schoeff's first trial, the State used Schoeff's admission that he and Morgan were dealing heroin and text messages between them to establish the agreement required for the conspiracy. The State also argued that it had proved the Level 1 felony aiding, inducing, or causing dealing resulting in death charge because Schoeff aided Morgan by driving her to the gas station to meet Hart to complete the dealing transaction, and Hart died as a result of ingesting the controlled substance Morgan gave to her. But the jury deadlocked on the Level 1 felony charge.

[24] In the retrial, the State used this same evidence to prove that Schoeff committed the distinct crime of aiding, inducing, or causing dealing resulting in death. We conclude that there is no reasonable possibility that the evidentiary facts used to establish the Level 5 felony *conspiracy* charge were also used to establish *all of* the essential elements for the Level 1 felony aiding, inducing, or causing dealing resulting in death charge during either of Schoeff's trials.

[25] Clearly, Schoeff's guilty verdict and conviction in the first trial for conspiracy to commit dealing was not an "implied acquittal" of the Level 1 felony aiding, inducing, or causing dealing resulting in death charge. An implied acquittal occurs when the "jury convicts the defendant of a lesser-included offense

*without commenting on the greater-offense.*" *Cleary*, 23 N.E.3d at 671 (citing *Kocielko v. State*, 938 N.E.2d 243, 249 (Ind. Ct. App. 2010)) (emphasis in original). Here, the jury was deadlocked on the Level 1 felony charge.

[26] For all of these reasons, Schoeff's conviction for conspiracy to commit dealing was not included in the State's allegation that he had committed Level 1 felony aiding, inducing, or causing dealing resulting in death. Therefore, retrial on the Level 1 felony charge did not violate his procedural double jeopardy rights.[5]

## Sufficient Evidence

[27] Schoeff also claims that his Level 1 felony conviction is not supported by sufficient evidence. For sufficiency of the evidence challenges, we consider only probative evidence and reasonable inferences that support the judgment of the trier of fact. *Hall v. State*, 177 N.E.3d 1183, 1191 (Ind. 2021). We will neither reweigh the evidence nor judge witness credibility. *Id.* We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[28] To prove that Schoeff committed Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death, the State was required to

---

[5] Although not raised by Schoeff in his Appellant's brief, we also observe that under the doctrine of continuing jeopardy, retrial following a "hung jury" does not violate a defendant's double jeopardy rights. *Cleary*, 23 N.E.3d at 673 (citing *Griffin v. State*, 717 N.E.2d 73, 78-79 (Ind. 1999)). The doctrine of continuing jeopardy provides that "a defendant who is retried following a hung jury is not placed in jeopardy twice for the same offense, because the initial jeopardy that attaches to a charge is simply suspended by the jury's failure to reach a verdict." *Id.* (quoting *Davenport v. State*, 734 N.E.2d 622, 625 (Ind. Ct. App. 2000)).

show (1) Schoeff knowingly or intentionally aided, induced, or caused Morgan to deliver a controlled substance to Hart; (2) Hart used, injected, inhaled, absorbed, or ingested the controlled substance; (3) resulting in Hart's death. *See* I.C. §§ 35-42-1-1.5(a) & 35-41-2-4; Appellant's App. p. 163. Schoeff argues that the evidence is insufficient to support his conviction because he was not in the vehicle when Morgan gave Hart heroin in exchange for $40. Further, he claims there was no evidence that he "had any involvement in the sale or dealing of the drug . . . ." Appellant's Br. at 12.

[29] Contrary to Schoeff's claims, the State presented sufficient evidence to establish that he and Morgan were both involved in dealing heroin to Hart and Stockton. Stockton testified that he and Hart had purchased heroin from Schoeff and Morgan a week before the dealing transaction charged in this case. Stockton saw Schoeff weigh the heroin and give it to Morgan before she completed the transaction with Hart. On October 16, Morgan and Hart arranged to meet so that Hart could purchase heroin. Schoeff drove Morgan to the gas station to meet with Hart and Stockton. Schoeff exited the vehicle and went into the storefront but did not make any purchases while he was at the gas station. From this evidence, it was reasonable for the jury to conclude that the only reason Schoeff and Morgan were present at the gas station was to sell heroin to Hart

and Stockton. Morgan completed the drug transaction with Hart, and Schoeff returned to the vehicle and drove Hart and Stockton back to Stockton's home.[6]

[30] As he did at trial, Schoeff is attempting to cast doubt on the credibility of Stockton's testimony describing what occurred on October 16. But his arguments are merely a request for our court to reweigh the evidence and the credibility of the witnesses, which we will not do. For all of these reasons, we conclude that the State presented sufficient evidence to prove that Schoeff committed Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death.[7]

## Conclusion

[31] Schoeff's right to be free from double jeopardy was not violated when the State was allowed to retry him for Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death after the jury was unable to reach a verdict on that charge in his first trial. In addition, the State presented sufficient evidence to prove that he committed the offense. We therefore affirm his Level 1 felony conviction.

---

[6] Schoeff does not challenge the sufficiency of the evidence proving that Morgan sold the fentanyl to Hart, which Hart ingested, causing her death.

[7] Because the trial court vacated Schoeff's Level 5 felony conspiracy to commit dealing conviction, we do not address his claim that the evidence was also insufficient to support that conviction.

Affirmed.


Tavitas, J., concurs with separate opinion.
Weissmann, J., concurs in part and dissents in part, with separate opinion.


ATTORNEY FOR APPELLANT

Antonio G. Sisson
Muncie, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

**Tavitas, Judge, concurring.**

[33] Since 1851, the Indiana Constitution has provided, in relevant part: "No person shall be put in jeopardy twice for the same offense." IND. CONST., art. 1, § 14; *Richardson v. State*, 717 N.E.2d 32, 38 (Ind. 1999). Double jeopardy analysis under the Indiana Constitution today, however, is in a state of flux. "Historically, the prohibition against double jeopardy applied as a **procedural** bar to a subsequent prosecution for the same offense, whether after acquittal or conviction. Over time, the protection evolved beyond the procedural context to embody a **substantive** bar to multiple convictions or punishments for the same offense in a single trial." *Wadle v. State*, 151 N.E.3d 227, 235 (Ind. 2020) (emphasis added). *Richardson* previously governed both procedural and substantive double jeopardy under the Indiana Constitution. In *Wadle*, our Supreme Court made significant changes to our substantive double jeopardy analysis and held that *Richardson* no longer governs the substantive double jeopardy analysis. The Court, however, left reconsideration of our analysis in the procedural double jeopardy context for another day.

[34] Here, Schoeff raises arguments under the Successive Prosecution Statute, Indiana Code Section 35-41-4-3, and Article 1, Section 14 of the Indiana Constitution to challenge his retrial for aiding, inducing, or causing dealing in a controlled substance resulting in death after he was previously convicted of

conspiracy to commit dealing in a narcotic drug in the first trial.[8] The issue, thus, is one of procedural double jeopardy. I concur with Judge Mathias that Schoeff's second trial was barred by neither the Successive Prosecution Statute nor the Indiana Constitution under *Richardson*. I write separately, however, for two reasons: (1) because I disagree with the dissent's analysis of our Successive Prosecution Statute; and (2) to emphasize that the constitutional procedural double jeopardy analysis under *Richardson* is unworkable.

## I. Successive Prosecution Statute

Schoeff argues that his second trial was barred under the Successive Prosecution Statute because the conspiracy offense "is essentially a lesser" included offense of the aiding offense for which Schoeff was convicted in the first trial. Appellant's Br. p. 10. The Successive Prosecution Statute provides, in relevant part:

> (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense **and if:**
>
>> (1) the former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an **included offense** constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.).

(Emphasis added).

---

[8] I agree with my colleagues that Schoeff's federal double jeopardy argument is waived.

[36] I agree with Judge Mathias that Schoeff's second trial was not barred by our Successive Prosecution Statute because the conspiracy offense and the aiding offense here require proof of distinct statutory elements and, therefore, are not "included" offenses. Judge Mathias is correct that, in analyzing "included offense" under subsection (a)(1) of the Successive Prosecution Statute, we should refer to the Included Offense Statute, Indiana Code Section 35-31.5-2-168, not the *Richardson* actual-evidence test.

[37] I respectfully disagree with the dissent's analysis, which appears to conclude that a "same offense" under the *Richardson* actual-evidence test is an "included" offense under the statutes, and that the second prosecution here is, therefore, barred both by the Successive Prosecution Statute and Article 1, Section 14. I conclude that the proper analysis is to first determine whether the offenses are barred under the Successive Prosecution Statute. In interpreting "included offense" under this statute, we look to the Included Offense Statute, not *Richardson*. Second, only if the second trial is not barred by the Successive Prosecution Statute, we determine whether the second trial is barred under Article 1, Section 14 of the Indiana Constitution, and this inquiry is currently governed by *Richardson*.

[38] I reach this analysis for two reasons. First, analyzing the statutes before analyzing Article 1, Section 14 is consistent with the "familiar canon of statutory interpretation that statutes should be interpreted so as to avoid constitutional issues." *Ind. Right to Life Victory Fund v. Morales*, 217 N.E.3d 517, 522 (Ind. 2023). Under this canon of statutory interpretation, we determine

whether the two offenses are "included" under the Successive Prosecution Statute before we decide the constitutional issue here.

[39] Second, analyzing the concept of "included offense" without reference to the *Richardson* actual-evidence test is more faithful to the text of the statutes. The dissent uses the actual evidence introduced at trial to determine that the two offenses are "included." The Included Offense Statute, however, defines an included offense, in part, as one that is "established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged." Ind. Code § 35-31.5-2-168(1). The Included Offense Statute's use of "elements" refers to the statutory elements of the charged offenses, not the evidence introduced at trial to prove those elements. Indeed, in analyzing the Included Offense Statute under *Wadle* in substantive double jeopardy cases, we compare the statutory elements without reference to the evidence introduced at trial. *See Wadle*, 151 N.E.3d at 253.

[40] Our Supreme Court recently noted in *A.W. v. State*, 229 N.E.3d 1060, 1068 (Ind. 2024), that "[i]nconsistency breeds confusion, and confusion imperils the rule of law." Here, it would be inconsistent to analyze the Included Offense Statute differently in substantive double jeopardy cases under *Wadle* and in procedural double jeopardy cases under *Richardson*. For these reasons, I disagree with the dissent's statutory procedural double jeopardy analysis.

## II. Procedural Double Jeopardy under the Indiana Constitution

As a matter of procedural double jeopardy under the Indiana Constitution, although *Richardson* remains the governing test, *Richardson*'s actual-evidence test is unworkable. Prior to *Richardson*, our courts "did not separately evaluate the Indiana Constitution as an additional, independent source of double jeopardy protection. Instead, we generally addressed double jeopardy claims by applying the prevailing understanding of federal jurisprudence and merely referred to the Indiana Double Jeopardy Clause." *Richardson*, 717 N.E.2d at 49.

The Court in *Richardson*, however, sought to breathe new life into the Indiana Constitution as an independent source of double jeopardy protections apart from its federal counterpart. *Id*. *Richardson*, thus, announced the following test to govern double jeopardy under the Indiana Constitution: "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense."[9] *Id*.

*Richardson*, however, was a somewhat fragmented decision. Justices Shepard and Sullivan concurred, but Justice Sullivan expressed concerns about the breadth of *Richardson*'s application. *Id.* at 55 (Sullivan, J., concurring). Justices

---

[9] Only the "actual evidence" portion of the *Richardson* test is implicated in the case before us.

Selby and Boehm each concurred in the result with separate opinions. Notably, Justice Selby believed that the majority's test lost sight of a "straightforward idea—a person cannot be tried twice for the same crime." *Id.* at 57 (Selby, J., concurring in result).

[44] *Richardson*'s troubles did not end there. Discussing *Richardson* over several pages in *Wadle,* 151 N.E.3d at 241, our Supreme Court noted that, despite *Richardson*'s "lofty goal, subsequent application of the rule quickly proved untenable, ultimately forcing the Court to retreat from its all-inclusive analytical framework." *Richardson*'s two-part test, which involved comparing the statutory elements and the actual evidence presented at trial, "generated more confusion than clarity, causing some courts to conflate the separate tests." *Id*. Apart from this, "selective[]" application of one test over the other produced "inconsistent results." *Id*.

[45] Amidst these complications in applying *Richardson*, our Supreme Court attempted to clarify ambiguities in the actual-evidence test, but this only created new problems in applying that test. *Id*. at 242-43. The newly formulated actual-evidence test rendered the test "vulnerable to arbitrary application." *Id*. at 243. The Court increasingly distanced itself from the actual-evidence test and "turned to the rules of statutory construction and common law announced by Justices Sullivan and Boehm in their respective *Richardson* concurrences," but this in turn generated new "confusion among the bench and bar over the proper standard to address claims of double jeopardy." *Id*. *Richardson*, thus, resulted in what *Wadle* described as:

a patchwork of conflicting precedent, a jurisprudence of "double jeopardy double talk" that underscores *Richardson*'s inherent flaws. *See* Akhil Reed Amar, DOUBLE JEOPARDY LAW MADE SIMPLE, 106 Yale L.J. 1807, 1807 (1997). The shifting standards and inconsistent application of controlling tests create an unpredictable approach to double jeopardy, ultimately depriving our courts of clear guidance and preventing the Indiana bar—defense counsel and prosecutors alike—from effectively preparing their cases and representing their clients.

*Id*. at 244.

[46] In light of these difficulties, our Supreme Court in *Wadle* made significant changes to our double jeopardy jurisprudence. *Wadle* "expressly" overruled *Richardson* in the context of substantive double jeopardy claims and announced a new analytical framework based on statutory interpretation. *Id*. The Court further held that Article 1, Section 14 of the Indiana Constitution "operates only as a procedural bar to successive prosecutions for the same offense." *Wadle*, 151 N.E.3d at 237. After *Wadle*, substantive double jeopardy is no longer rooted in the Indiana Constitution or governed by *Richardson*. The Indiana Constitution governs only procedural double jeopardy.

[47] It is true, as my colleagues acknowledge, that *Wadle* "expressly reserve[d] any conclusion on whether to overrule *Richardson*" as the governing test for procedural double jeopardy under the Indiana Constitution. *Wadle*, 151 N.E.3d at 244 n.15. *Richardson*, thus, has not formally been overruled as the governing test for procedural double jeopardy claims under the Indiana Constitution.

[48] The confusion and disagreement espoused by *Richardson*'s actual-evidence test, however, exist just as profoundly in the procedural double jeopardy context as

it did in the substantive double jeopardy context. *Compare Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (applying the actual-evidence test in a procedural double jeopardy context), *with Cleary v. State*, 23 N.E.3d 664 (Ind. 2015) (declining to apply the actual-evidence test in a procedural double jeopardy context). This panel's split decision is evidence thereof.

[49] Moreover, the entire premise that *Richardson*'s actual-evidence test applies in the procedural double jeopardy context raises questions. *Richardson*, of course, was a substantive double jeopardy case. Our Supreme Court did not apply the actual-evidence test to a procedural double jeopardy case until it decided *Garrett*, 992 N.E.2d 710. But *Garrett* belies the difficulty in applying the actual-evidence test in typical procedural double jeopardy cases.

[50] In *Garrett*, the defendant was charged with two rapes of the same woman in the same day. In the first trial, the jury found Garrett not guilty of one of the rape charges but was "unable to reach a verdict" on the other rape charge. *Id.* at 716. At a second trial on the hung rape charge, the trial court found Garrett guilty. *Id.* at 717. After an unsuccessful appeal, Garrett sought post-conviction relief and argued that his trial and appellate counsel were ineffective for failing to raise a double jeopardy challenge to the second trial. *Id.* at 718. At the time, this Court had expressed uncertainty about the application of the *Richardson* actual-evidence test to procedural double jeopardy cases. *See Buggs v. State*, 844 N.E.2d 195, 201-202 (Ind. Ct. App. 2006), *trans. denied*, *declined to follow by Garrett*, 992 N.E.2d 710.

[51]    Our Supreme Court held in *Garrett*, however, that *Richardson*'s actual evidence test "is applicable to cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury." *Garrett*, 992 N.E.2d at 714. The Court further held that there was a "reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of Rape for which Garrett was convicted" in the second trial, which violated Article 1, Section 14 of the Indiana Constitution.[10] *Id.* at 723-25.

[52]    Because *Garrett* involved an appeal after the second trial had concluded, the Court had the benefit of comparing the evidence offered in each trial. But this masks obvious difficulties in applying *Richardson*'s actual-evidence test in the procedural double jeopardy context. To preserve the issue for appeal, a defendant must generally object to the second trial on double jeopardy grounds **before** that trial commences. *See, e.g.*, *Jester v. State*, 551 N.E.2d 840, 842 (Ind. 1990). But in ruling on such a motion, the trial court can only speculate as to whether the second trial risks a conviction based on the same "actual" evidence presented in the first trial.[11]

---

[10] The Court concluded, however, that Garrett's counsel were not ineffective.

[11] In the instant case, although Schoeff objected to the second trial on double jeopardy grounds before that trial commenced, he did not argue in his motion that the actual-evidence test applied. Rather, Schoeff argued in his motion that *Wadle* had "overrul[ed]" *Richardson* and that the *Wadle* test required dismissal of the aiding charge and vacatur of the second trial. Appellant's App. Vol. III p. 98.

[53]     Trial courts, thus, are faced with a Hobson's choice. They may either: (1) hold a second trial that, in retrospect, turns out to violate a defendant's double jeopardy rights; or (2) decline to hold a second trial, presuming double jeopardy. The actual-evidence test essentially requires trial courts to peer into a crystal ball and speculate as to whether a second trial risks a procedural double jeopardy violation.

[54]     The actual-evidence test, thus, is as unworkable in the procedural double jeopardy context as it is in the substantive double jeopardy context. The test simply does not work in the trenches when procedural double jeopardy issues arise. Judges, prosecutors, and defendants deserve a test that is clearer, non-speculative, and lends itself to consistent application.

**Weissmann, Judge, concurring in part and dissenting in part.**

[55] I respectfully dissent because I believe my colleagues are misapplying the actual-evidence test from *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). The analysis in Judge Mathias's lead opinion resembles the *Richardson* statutory-elements test, which does not apply in procedural double jeopardy cases. Meanwhile, Judge Tavitas's concurring opinion bypasses the *Richardson* actual-evidence test in favor of the "included offense" analysis from Indiana Code § 35-31.5-2-168 (Lesser Included Offense Statute), which is inadequate by itself to address the multi-tiered double jeopardy question presented here.

[56] As our Supreme Court has aptly noted, the *Richardson* actual-evidence test fell into disfavor because courts inconsistently applied it, leading to disparate interpretations of "same offense" within the meaning of our constitution's Double Jeopardy Clause. *Wadle v. State*, 151 N.E.3d 227, 240-44 (Ind. 2020); Ind. Const. art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). But in Schoeff's situation, the actual-evidence test is up to the task.

[57] While Schoeff was serving prison time for Level 5 felony conspiracy to commit dealing in a controlled substance (Conspiracy to Deal), the State tried him again. In the second trial, the State used the same key evidence from the first trial to prove Schoeff guilty of Level 1 felony aiding, inducing, or causing dealing in a controlled substance resulting in death (Accessory Dealing Resulting in Death). In other words, the State sought to convict him in the second trial of being an accessory to dealing the same drugs that formed the

basis of his conviction in the first trial. This was a procedural double jeopardy violation barred by the Indiana Constitution and the statutory prohibition against successive prosecutions for the same offense. *See* Ind. Const. art. 1, § 14; Ind. Code § 35-41-4-3.

## Discussion

## I. Procedural Double Jeopardy and the Actual-Evidence Test

Substantive double jeopardy refers to "claims concerning multiple convictions in a single prosecution, as opposed to 'procedural double jeopardy' claims, which [generally] concern convictions for the same offense in successive prosecutions." *Carranza v. State*, 184 N.E.3d 712, 715 (Ind. Ct. App. 2023) (quoting *Wadle*, 151 N.E.3d at 248-49). "[B]oth strands of double jeopardy—substantive and procedural—share a 'core policy' of preventing the state 'from prosecuting and punishing arbitrarily, without legitimate justification." *Wadle*, 151 N.E.3d at 246 (quoting Note, *Twice in Jeopardy*, 75 Yale L.J. 262, 267 (1965)). But the similarities between substantive and procedural double jeopardy largely end there.

For instance, the implications of a procedural double jeopardy violation are necessarily broader and more burdensome than those associated with a substantive double jeopardy transgression. *See id.* (ruling that "the procedural bar to double jeopardy, 'whether following acquittals or convictions,' placates 'concerns that extend beyond merely the possibility of an enhanced sentence' or excessive punishment" (citations omitted)). For one, a procedural double

jeopardy violation contravenes Article 1, Section 14 whereas a substantive double jeopardy violation does not. *See id.*

[60] And unlike substantive double jeopardy, procedural double jeopardy arises from multiple prosecutions, not a lone trial. As a result, a procedural double jeopardy violation usually involves greater State overreach and attendant burdens on the defendant. These burdens can include "a continuing state of anxiety and insecurity," embarrassment, expense, and an increased risk of wrongful conviction upon retrial when faced with an entirely new jury. *Id.* at 245 (quoting *Green v. United States*, 355 U.S. 184, 187 (1957)). After all, "[j]eopardy is the risk of trial and conviction, not punishment." *Garrett v. State*, 992 N.E.2d 710, 721 (Ind. 2013).

[61] But despite the differences between substantive and procedural double jeopardy, *Richardson* managed to unite the two branches under a "single comprehensive rule" for more than two decades before *Wadle*. *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 2002). Unhappy with courts' disparate applications of *Richardson* that "created more confusion than clarity," our Supreme Court carved out a new test for substantive double jeopardy in *Wadle*. 151 N.E.3d at 235, 238-244. The only portion of *Richardson* left intact by *Wadle* was the actual-evidence test, with its relevance limited to procedural double jeopardy questions. *Id.* at 244 n.15.

[62] In reaching this landmark decision, the Court made clear that going forward, substantive double jeopardy analysis would concentrate on statutory interpretation. *Id.* at 235. Procedural double jeopardy analysis, however, would

remain focused on whether the State prosecuted the defendant twice for the "same offense." *Id.* at 239-40. This "same offense" determination "calls for an analysis of the evidence as applied to, rather than as required by, each element of the statutory offense." *Id.* at 239. In other words, the actual-evidence test "looks beyond the elements of a crime to determine whether two offenses are the 'same.'" *Id.* at 240. Thus, the *Wadle* Court left intact a procedural double jeopardy test that is highly fact sensitive.

[63] *Richardson's* actual-evidence test, by focusing on the evidence (an inherently factual pursuit), offers value in the procedural double jeopardy context that the *Wadle* Court found lacking in substantive double jeopardy applications. Although courts applying the actual-evidence test have not always followed a singular path, our Supreme Court precedent provides the necessary throughline to resolve Schoeff's procedural double jeopardy claim.

## A. Application of the Actual-Evidence Test After *Richardson*

[64] Four years after handing down *Richardson*, our Supreme Court added that "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey,* 761 N.E.2d at 833. Though *Wadle* interpreted this language as ruling that *Richardson's* actual-evidence test requires a total evidentiary overlap between the essential elements of both offenses, most of our Supreme Court's pre-*Wadle* decisions relying on *Spivey*—and even *Spivey* itself—reach results consistent

with a straightforward *Richardson* actual-evidence analysis. *Wadle*, 151 N.E.3d at 242-43; *Spivey*, 761 N.E.2d at 832-34.

[65] Just after noting that no double jeopardy violation occurs when "the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense," our Supreme Court in *Spivey* noted:

> Application of this principle has been articulated in different ways. *Compare Richardson*, 717 N.E.2d at 54 ("the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery"), *with Chapman v. State,* 719 N.E.2d 1232, 1234 (Ind.1999) ("the same evidence used by the jury to establish the essential elements of murder was also included among the evidence establishing the essential elements of robbery as a Class A felony").

*Spivey*, 761 N.E.2d at 833.

[66] By affirmatively citing *Richardson* and *Chapman*, which found a double jeopardy violation when the same evidence proved all the essential elements of one crime but only part of the essential elements of another, *Spivey* signaled that it was not changing *Richardson's* actual-evidence test. In other words, treating *Spivey's* "only one or even several, but not all" language as requiring a full evidentiary overlap before double jeopardy occurs appears inconsistent with the rest of

*Spivey's* analysis. At no point does *Spivey* acknowledge its intent to revise *Richardson's* actual-evidence test.[12]

[67] And after *Spivey*, the supposed requirement that a defendant prove a complete evidentiary overlap to show a double jeopardy violation did not create an analytical shift—at least not in our Supreme Court. To date, the Court has relied on *Spivey* in 18 double jeopardy cases. In only 3 of those did the Court suggest that *Spivey* required a complete evidentiary overlap. And none of those 3 was otherwise inconsistent with *Richardson*:

- *Tyson v. State*, 766 N.E.2d 715, 717 (Ind. 2002) (ruling that for separate drug transactions, "convictions for both dealing a narcotic drug and conspiracy to deal a narcotic drug violate the Indiana Double Jeopardy

---

[12] Our Supreme Court has never indicated that *Spivey* overruled *Richardson*. To the contrary, the Court in *Wadle* specifically preserved *Richardson's* actual-evidence test in a procedural double jeopardy context. *Wadle*, 151 N.E.3d at 244 n.15. But if *Spivey* is construed as requiring full evidentiary overlap before a double jeopardy violation occurs, *Spivey* is entirely inconsistent with *Richardson*.

This is so because the convictions on which *Richardson* based its double jeopardy finding—robbery and misdemeanor battery—did not involve a full evidentiary overlap. The essential elements of the robbery were the defendant's knowing or intentional taking of property from the victim by using or threatening the use of force on the victim. *Richardson*, 717 N.E.2d at 51. The essential elements of the misdemeanor battery were the defendant's knowing or intentional touching of the victim in a rude, insolent, or angry manner. *Id.* at 52.

The evidence of the taking of property from the victim—a billfold—helped prove the essential elements of robbery but did not prove any of the essential elements of misdemeanor battery under the facts of *Richardson*. *Id.* at 54. Yet, *Richardson* found that because all the evidence used to prove the battery also helped prove the essential elements of the robbery, "the defendant has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of robbery were also used to establish the essential elements of the class A misdemeanor battery." *Id.* at 54.

Essentially, our Supreme Court in *Richardson* found a double jeopardy violation because the evidence that proved all the essential elements of one offense (battery) was encompassed within the broader evidence proving the essential elements of the other offense (robbery). Thus, *Richardson* cannot be interpreted as requiring that *all* the elements of robbery must have been proven with the same evidence as *all* the elements of misdemeanor battery. In fact, if that had been the test in *Richardson*, a different outcome would have been reached, given that the same evidence did not prove all the elements of both robbery and battery.

Clause," although the conspiracy counts required evidence of an agreement that the dealing counts did not).

- *Sloan v. State*, 947 N.E.2d 917, 924-25 (Ind. 2011) (finding no double jeopardy violation arising from convictions for Class A and Class C felony child molesting where the evidence showed distinct acts of fondling and penetration).

- *Wadle v. State*, 151 N.E.3d at 242-43, 243 n.14 (mentioning, but not applying, the essential-elements language from *Spivey*).

[68] During the two decades bridging *Tyson*, *Sloan*, and *Wadle*, our Supreme Court did not again suggest that *Spivey* required a complete evidentiary overlap. In fact, the Court's 15 other double jeopardy cases citing *Spivey* do not establish an actual-evidence test that is different from *Richardson's* version.[13]

[69] For instance, in *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008), our Supreme Court simply described *Spivey* as "explain[ing]" the *Richardson* actual-evidence test. In four other decisions, the Court stated that *Spivey* "clarified" *Richardson*. *Layman v. State*, 42 N.E.3d 972, 980 n.7 (Ind. 2015) (quoting *Spivey*, 761 N.E.2d at 833); *Gross v. State*, 769 N.E.2d 1136, 1138 (Ind. 2002); *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002); *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002).

---

[13] *Layman v. State*, 42 N.E.3d 972, 980 n.7 (Ind. 2015); *Hines v. State*, 30 N.E.3d 1216, 1221-22 (Ind. 2015); *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013); *Sanjari v. State*, 961 N.E.2d 1005, 1007 (Ind. 2012); *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008); *Bradley v. State*, 867 N.E.2d 1282, 1285 (Ind. 2007); *Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2006); *Robinson v. State*, 775 N.E.2d 316, 320 (Ind. 2002); *Carrico v. State*, 775 N.E.2d 312, 314 (Ind. 2002); *Guyton v. State*, 771 N.E.2d 1141, 1142 (Ind. 2002); *Williams v. State*, 771 N.E.2d 70, 75 (Ind. 2002); *Davis v. State*, 770 N.E.2d 319, 323 (Ind. 2002); *Gross v. State*, 769 N.E.2d 1136, 1138-39 (Ind. 2002); *Henderson v. State*, 769 N.E.2d 172, 177 (Ind. 2002); *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002).

[70] At least two of the post-*Spivey*, pre-*Wadle* decisions relying on *Spivey* rested on the rule that some, but not full, evidentiary overlap is sufficient to establish double jeopardy. *See, e.g.*, *Hines v. State*, 30 N.E.3d 1216, 1224-25 (Ind. 2015) (finding "a reasonable possibility that the same evidence used by the jury to establish the essential elements of battery was also included among the evidence used by the jury to establish the essential elements of criminal confinement"); *Davis,* 770 N.E.2d at 324 (finding a reasonable possibility that the jury relied on the same evidence to prove attempted murder and aggravated battery, although attempted murder required proof of an essential element of attempted murder— specific intent to kill—that aggravated battery did not); *Gross,* 769 N.E.2d at 1139-40 (finding double jeopardy violation where there was a reasonable possibility that the same evidence used to prove the essential elements of murder also proved most of the elements of Class A felony robbery.[14]

[71] *Hines* is particularly noteworthy because it was written by Indiana Supreme Court Chief Justice Brent Dickson—the same Justice who authored the majority opinions in *Richardson* and *Spivey*. In *Hines*, the Court employed an

---

[14] During this post-*Spivey*, pre-*Wadle* period, this Court also declined to view *Spivey* as altering the *Richardson* actual-evidence test. In *Troutner v. State*, 951 N.E.2d 603, 610 (Ind. Ct. App. 2011), *trans. denied*, a panel of this Court rejected the State's claim that, in light of *Spivey*, a "complete evidentiary overlap" between the robbery and misdemeanor battery offenses was required before those dual convictions would satisfy the *Richardson* actual-evidence test. The *Troutner* Court reasoned that this "argument is wholly negated by our supreme court's analysis in *Richardson*, where the court held that the battery conviction was duplicative of the defendant's robbery conviction." *Id.* The Court concluded that "[i]n the language of *Spivey*, here the evidentiary facts presented by the State to establish the essential elements of Troutner's robbery also established all of the essential elements of his battery," despite the lack of full evidentiary overlap in the offenses. *Id.* Thus, at least to this panel of the Court of Appeals, the actual-evidence tests in *Spivey* and *Richardson* are identical. *Id.*

actual-evidence test more reminiscent of *Richardson* than *Wadle's* interpretation of *Spivey*. *Hines*, 30 N.E.3d at 1221-25. According to the *Hines* Court, a double jeopardy violation under the actual-evidence test requires "a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense." *Id.* at 1222.

[72] Although *Hines* alluded to *Spivey*, *Hines* never stated that the actual-evidence test required the same proof of all the elements of both offenses. Moreover, *Hines's* finding of a double jeopardy violation arising from criminal confinement and battery convictions is inconsistent with *Spivey* if *Spivey* requires full evidentiary overlap. The *Hines* Court found a double jeopardy violation where the jury could have relied on the same evidence proving the defendant's touching of the officer in a rude, insolent manner—an element of Class D felony battery—also proved the "confined" element of Class C felony criminal confinement. *Hines*, 30 N.E.3d at 1222. Thus, the *Hines* Court did not require the same evidence to prove *all* the elements of confinement and *all* the elements of battery. After all, evidence that the victim was a penal facility employee engaged in her official duty—an essential element of the battery—did not prove any of the essential elements of criminal confinement. Ind. Code § 35-42-3-3(b)(1)(C) (2012); Ind. Code § 35-42-2-1(a)(2)(H) (2012).

[73] In several other post-*Spivey* decisions, our Supreme Court concluded that no Article 1, Section 14 violation occurred because the evidence of one essential

element of one crime was different from the evidence of an essential element of a second crime. *Lee v. State*, 892 N.E.2d 1231, 1236-1237 (Ind. 2008) (ruling that jury likely used the barging into the home to establish the burglary and the evidence of the defendant's threats and demands to convict of attempted armed robbery); *Carrico v. State*, 775 N.E.2d 312, 314 (Ind. 2002) (finding convictions for murder and Class B felony robbery did not violate double jeopardy because the shared evidence was only as to one element of each crime); *Williams v. State*, 771 N.E.2d 70, 75-76 (Ind. 2002) (finding convictions for Class A felony burglary and Class C felony intimidation did not violate double jeopardy because each required evidence of essential elements that the other did not); *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (finding no double jeopardy violation arising from convictions for murder by gunshot and carrying a handgun without a license because carrying a gun and using it were different acts, presumably proved by different evidence); *Henderson*, 769 N.E.2d 172, 178 (Ind. 2002) (finding "the offenses of felony-murder and Class A felony conspiracy [to commit robbery] were each established by the proof of a fact not used to establish the other offense"); *Bald*, 766 N.E.2d at 1172 (concluding "each conviction [Class A felony arson and three felony murders] required proof of at least one unique evidentiary fact").

[74] In addition, none of our Supreme Court's 18 cases citing *Spivey* that found a double jeopardy violation did so based on an explicit finding that there was a reasonable possibility that the same evidence was used to prove all the essential elements of both offenses. *See, e.g.*, *Garrett v. State*, 992 N.E.2d 710, 722 (Ind.

2013) (double jeopardy violation arose because evidence of first rape was introduced into evidence of second rape, leaving possibility that jury relied on the evidence of one crime in finding the defendant guilty of another).

## B. Expansion of the Actual-Evidence Test to Acquittals

In the midst of this confusion over *Spivey's* impact, our Supreme Court expanded *Richardson's* actual-evidence test to acquittals. *Garrett*, 992 N.E.2d at 722-23. In *Garrett*, the defendant was tried for two alleged rapes of the same victim on the same day, and the jury acquitted him of the first rape charge but deadlocked on the second. *Id.* at 716. The defendant was tried again for the second rape—this time in a bench trial—but the evidence largely consisted of the evidence of the first rape for which he had been acquitted. *Id.* at 716-17. The Court found "a reasonable possibility that the evidentiary facts used by the jury in the first trial to establish the essential elements of Rape, for which Garrett was acquitted, may also have been used on retrial to establish all of the essential elements of Rape for which Garrett was convicted." *Id.* at 723.

Our Supreme Court has applied the actual-evidence test in only one procedural double jeopardy case since *Garrett*: *Cleary v. State*, 23 N.E.3d 664 (Ind. 2015). Cleary was tried on five counts and three infractions, all arising from a single drunk driving incident that killed one person. The jury returned verdicts of guilty on two of the misdemeanor counts of operating a motor vehicle while intoxicated (OMVI) and also found that Cleary had committed the infractions. The jury deadlocked, however, on the three remaining counts: two felony and

one misdemeanor OMVI counts. The trial court refused to enter judgment on the guilty verdicts and ultimately ordered a retrial on all eight counts.

[77] On appeal, Cleary claimed his second trial violated Article 1, Section 14. But the Court found Article 1, Section 14 protections were never triggered because Cleary was neither convicted nor acquitted of any crime before his retrial on all the counts. *Id.* at 674-75; *see* Ind. Code § 35-41-4-3 (barring successive prosecutions for the same offense only after acquittal or conviction). *Cleary* therefore offers little guidance here in applying *Garrett's* modified actual-evidence test in procedural double jeopardy cases.

## II. Utilizing the Actual-Evidence Test to Resolve Schoeff's Double Jeopardy Claim

[78] What I glean from this review of the law is that the complete evidentiary overlap seemingly derived from *Spivey* has never been put into practice by our Supreme Court when applying *Richardson's* actual-evidence test. Although *Wadle* suggested vagaries in the test when applied in a substantive double jeopardy context, I believe *Richardson's* actual-evidence test works in Schoeff's procedural double jeopardy case. The test offers an intuitive, fact-sensitive approach to determining whether the State is improperly taking two bites of the same apple by prosecuting a defendant again based on evidence of the same criminal act for which the defendant already was convicted or acquitted.

[79] Guided by *Richardson* and *Garrett*, and helped by our statutory prohibition against successive prosecutions (Indiana Code § 35-41-4-3), I would find that

the evidence from Schoeff's first trial reveals the State used the same evidence to encourage the jury to convict him of both Conspiracy to Deal and Accessory Dealing Resulting in Death. Once Schoeff was convicted of Conspiracy to Deal, the State could not prosecute him for Accessory Dealing Resulting in Death.

## A. Applying *Richardson* as Intended

[80]    The evidentiary overlap required by *Richardson's* actual-evidence test is reflected in the chart below. In fact, the chart shows that the State used the same evidence to prove *all* the essential elements of Conspiracy to Deal and *most, but not all*, of the essential elements of Accessory Dealing Resulting in Death:

| Essential Elements of Conspiracy to Deal | Essential Elements of Accessory Dealing Resulting in Death | Shared Evidence Used to Prove these Essential Elements |
|---|---|---|
| Intent to commit dealing in a narcotic | Intent to commit dealing in a controlled substance | Evidence that Schoeff and Morgan had an ongoing drug selling partnership and agreed to and did sell heroin (which contained fentanyl) to Hart |
| Agreement between Schoeff and Morgan to commit dealing in a narcotic<br><br>and<br><br>Overt acts in furtherance of the agreement including: (1) obtaining a substance purported to be heroin or fentanyl; (2) communicating with Hart; (3) arranging sale of heroin and/or fentanyl; (4) providing heroin and/or fentanyl to Hart. | Aided, induced, or caused Morgan to deliver controlled substance | Evidence that: Schoeff and Morgan partnered in the sale of narcotics and other controlled substances and divided responsibilities to avoid detection; Vera obtained the illegal drugs they sold from sources in Dayton, Ohio; both Schoeff and Morgan used Morgan's phone through which the drug purchases were accomplished; Morgan agreed through text |

| | | messages to sell heroin to Hart at a specific gas station; Schoeff drove Morgan to the gas station at which Morgan provided the drugs to Hart and took her payment; and Schoeff and Morgan then drove Hart and her boyfriend to her boyfriend's home |
|---|---|---|
| [No comparable element] | Use, injection, inhaling, or absorption of fentanyl/ heroin resulting in Hart's death | Evidence that Hart injected the drugs that Schoeff and Morgan sold her earlier that night |

Given that the evidence used to prove all the essential elements of Conspiracy to Deal also was used to prove most of the essential elements of Accessory Dealing Resulting in Death, the State could not—and did not—prove each of these offenses "by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. Said differently, the evidence used to prove Schoeff guilty of Accessory Dealing Resulting in Death necessarily also proved him guilty of Conspiracy to Deal. Therefore, for purposes of Article 1, Section 14, Conspiracy to Deal and Accessory Dealing Resulting in Death are the "same offense." Schoeff could not be convicted of both under Article 1, Section 14.

## B. Successive Prosecution Statute Implications

[81] Aligning with the principles of double jeopardy articulated in Article 1, Section 14, the Successive Prosecution Statute specifies:

> A prosecution is barred if there was a former prosecution of the defendant *based on the same facts* and for commission of the same

offense and if . . . the former prosecution resulted in an acquittal or a conviction of the defendant (*A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.*)[.]

Ind. Code § 35-41-4-3(a)(1) (emphases added).

[82] The "statutory bar" in the Successive Prosecution Statute "rests on the longstanding common-law recognition that a 'lesser included' offense is the 'same' as its greater (encompassing) offense." *Wadle*, 151 N.E.3d at 240. But a not guilty verdict is not a prerequisite to an "acquittal" under the Successive Prosecution Statute.

[83] Instead, an acquittal of a greater offense may be implied when the first trial results in judgment of conviction for an included offense. Ind. Code § 35-41-4-3(a)(1); *see Cleary*, 23 N.E.3d at 669 (referring to subsection (a) of the Successive Prosecution Statute as an "implied acquittal provision"). When an implied acquittal of the greater offense occurs, the defendant may not later be tried on the greater offense. *Hoover v. State*, 918 N.E.2d 724, 734-36 (Ind. Ct. App. 2009).

[84] The statutory double jeopardy protections found in the Successive Prosecution Statute thus overlap with the constitutional double jeopardy protections in Article 1, Section 14. Both authorities bar a second prosecution based on the same facts for the same offense that was previously prosecuted to acquittal, implied acquittal, or conviction in an earlier proceeding. *Garrett*, 992 N.E.2d at 722-23; Ind. Code § 35-41-4-3(a)(1). Article 1, Section 14 prevented Schoeff's

conviction for Accessory Dealing Resulting in Death after his conviction for Conspiracy to Deal because the two crimes were the "same offense" under these circumstances. The Successive Prosecution Statute, in turn, barred Schoeff's second trial for Accessory Dealing Resulting in Death because Schoeff was impliedly acquitted of that offense during the first trial, given that Conspiracy to Deal and Accessory Dealing Resulting in Death were prosecuted "based on the same facts" and were therefore "the same offense." Ind. Code § 35-41-4-3(a)(1).

[85] For instance, when a jury finds a defendant guilty of a lesser included offense but is hung on the greater offense, Article 1, Section 14 bars retrial on the greater offense after the trial court enters judgment of conviction on the lesser included offense. *Hoover*, 918 N.E.2d at 734-36. In other words, Article 1, Section 14 treats a greater offense and lesser offense as the "same offense" and prohibits a second trial after conviction or acquittal on one of the two "same offense[s]." [15]

---

[15] A new trial on a count on which the jury hung in the first trial, standing alone, does not implicate double jeopardy. *See, e.g., Haddix v. State*, 827 N.E.2d 1160, 1167 (Ind. Ct. App. 2005) (ruling that because the trial court declined to enter judgment on the guilty verdicts after the first trial, retrial on both the greater and lesser offenses did not fall within the "literal purview" of the Successive Prosecution Statute). In Schoeff's case, however, the trial court entered judgment of conviction on the first jury's guilty verdict for Conspiracy to Deal before Schoeff was retried on the Accessory Dealing Resulting in Death count on which the first jury was hung.

Once the trial court convicted Schoeff of the lesser offense of Conspiracy to Deal, Schoeff was impliedly acquitted of the same, greater offense of Accessory Dealing Resulting in Death under the Successive Prosecution Statute, and he also could not be retried. *See Hoover v. State*, 918 N.E.2d 724, 736 (Ind. Ct. App. 2009) (finding that the defendant's conviction on the lesser-included robbery offense constituted his implied

[86] Similarly, the Successive Prosecution Statute "provides that a conviction for a lesser-included offense absolutely bars any subsequent prosecution for the greater charged offense, because such a conviction is deemed an acquittal of the greater offense." *Id.* at 736 (quoting *Haddix v. State*, 827 N.E.2d 1160, 1167 (Ind. Ct. App. 2005)); Ind. Code § 35-41-4-3(a)(1) ("A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside.").

[87] Given this landscape, a finding under the *Richardson* actual-evidence test that Conspiracy to Deal and Accessory Dealing Resulting in Death are the "same offense" for purposes of Article 1, Section 14 seemingly demands the conclusion Schoeff seeks: once he was convicted of Conspiracy to Deal, the Successive Prosecution Statute barred his prosecution in the second trial for Accessory Dealing Resulting in Death. *See Hoover*, 918 N.E.2d at 734-36.[16]

---

acquittal under the Successive Prosecution Statute on the greater felony-murder charge on which the jury hung and precluded his retrial on the greater charge).

[16] This result is consistent with our Supreme Court's view that "[j]eopardy is the risk of trial and conviction, not punishment." *Garrett v. State*, 992 N.E.2d 710, 721 (Ind. Ct. App. 2013). In fact, the idea "that 'jeopardy' is 'risk' is the very core of double jeopardy jurisprudence." *Id.* (quoting *Bryant v. State*, 660 N.E.2d 290, 299 (Ind. 1995)). Thus, "double jeopardy protection prohibits twice subjecting an accused to the risk that he will be convicted of a single crime." *Id.* (emphasis added). Accordingly, a violation under Article 1, Section 14 has been found when "a defendant demonstrates 'that he might have been acquitted or convicted on the former trial' of the same crime for which he was convicted at the second trial." *Id.* (quoting *Brinkman v. State*, 57 Ind. 76, 79 (1877)).

## III. Misapplication of the Actual-Evidence Test

[88] The actual-evidence test focuses on the evidence used to convict rather than a strict comparison of only the elements of the offenses. *See Richardson*, 717 N.E.2d at 53. Thus, the actual-evidence test may reveal a double jeopardy violation even if the offenses do not have identical elements. *Id.* ("Even if the ... statutory elements test[] does not disclose a double jeopardy violation, the actual evidence test may."); *see, e.g.*, *Guffey v. State*, 717 N.E.2d 103, 105-07 (Ind. 1999) (finding convictions for aiding in the commission of armed robbery and conspiracy to commit armed robbery violated Article 1, Section 14 under the actual-evidence test, although the differing elements of the two offenses meant the statutory-elements test was not met).

[89] My colleagues focus almost exclusively on the statutory elements of Schoeff's charged offenses, rather than the evidence introduced to prove those elements— as the *Richardson* actual-evidence test requires. To convict Schoeff of Accessory Dealing Resulting in Death, the State had to prove that: (1) Schoeff knowingly aided, induced, or caused Vera Morgan to knowingly deliver a controlled substance; and (2) the delivered controlled substance was used, injected, inhaled, absorbed, or ingested resulting in Mandy Hart's death. App. Vol. II, p. 37; Ind. Code § 35-48-4-1 (dealing in a narcotic drug statute); Ind. Code § 35-42-1-1.5(a) (dealing resulting in death statute); Ind. Code § 35-41-2-4 (accessory liability statute).

[90] The State could convict Schoeff of Conspiracy to Deal, on the other hand, only if it proved that Schoeff, with intent to deal in a controlled substance, agreed with Morgan to deal in a controlled substance and that either Schoeff or Morgan performed an overt act in furtherance of that agreement. App. Vol. II, p. 63; Ind. Code § 35-48-4-1(a); Ind. Code § 35-41-5-2. As charged, the overt act element required proof that either Schoeff or Morgan: "(1) obtained a substance purported to be heroin or fentanyl; (2) communicated with Mandy Hart; (3) arranged sale of heroin and/or fentanyl; (4) provided heroin and/or fentanyl to Mandy Hart." App. Vol. II, p. 63.

[91] The lead opinion appears to assume that, because the statutory elements of Conspiracy to Deal and Accessory Dealing Resulting in Death are different, the evidence introduced to prove them necessarily is different. Taking this analysis to its logical extreme, a double jeopardy violation would occur only if the elements of the two offenses were identical. Only then would the evidence introduced to prove the elements of one offense be identical to the evidence used to prove all or some elements of the other offense.

[92] In this sense, the lead opinion reads more like an application of the *Richardson* statutory-elements test than a *Richardson* actual-evidence analysis. Under the statutory-elements test, two offenses are the "same offense" for purposes of Article 1, Section 14 if the statutory elements of one offense also necessarily establish the essential elements of the other offense. *Richardson*, 717 N.E.2d at 49-52. But our Supreme Court has expressly "exclude[d] the statutory-

elements test from claims of procedural double jeopardy." *Wadle,* 151 N.E.3d at 244 n.15 (citing *Garrett*, 992 N.E.2d at 721).

[93] The concurring opinion similarly rests on a foundation other than the actual-evidence test by applying an "included offense" analysis to determine whether a procedural double jeopardy violation exists. *Slip Op.*, ¶¶ 37-40 (relying on Indiana Code § 35-31.5-2-168 (Included Offense Statute)). Under the Included Offense Statute, an "[i]ncluded offense" is an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § § 35-31.5-2-168.

[94] The Included Offense Statute, like the *Richardson* statutory-elements test, focuses on the statutory definition of the crimes in determining whether a double jeopardy violation has occurred. Applying the Included Offense Statute is also the first step in substantive double jeopardy analysis under *Wadle*. 151 N.E.3d at 248-49. The concurring opinion, by relying on substantive double jeopardy analysis in a procedural double jeopardy case, blurs the line between the two branches.

[95] For these reasons, I would find that both Article 1, Section 14 and the Successive Prosecution Statute barred Schoeff's second trial and resulting conviction for Accessory Dealing Resulting in Death, given his earlier conviction for Conspiracy to Deal based on the same evidence. I would also find that Schoeff was impliedly acquitted of Accessory Dealing Resulting in Death when he was convicted of Conspiracy to Deal. Accordingly, I would reverse Schoeff's conviction for Accessory Dealing Resulting in Death and order reinstatement of Schoeff's conviction and sentence for Conspiracy to Deal.[17]

---

[17] I concur with my colleagues' determination that Schoeff waived his Fifth Amendment double jeopardy claim.